306 So.2d 33

**William Wiley JONES and Bobby Lee Weatherford**

**v.**

**STATE.**

**8 Div. 469.**

Court of Criminal Appeals of Alabama.

June 25, 1974.

Rehearing Denied July 16, 1974.

William H. Rogers, Moulton, for appellants.

William J. Baxley, Atty. Gen., Montgomery, Roger M. Monroe, Sp. Asst. Atty. Gen., Birmingham, for the State, appellee.

TYSON, Judge.

The Grand Jury of Lawrence County, Alabama, charged William Wiley Jones, Bobby Lee Weatherford, and also Billy Lee Bastin, with the altering, forging, or counterfeiting of "a twenty dollar Federal Reserve Note, drawn or purportedly drawn on the Federal Reserve Bank of St. Louis, Check Letter B, Face Plate 152, Back Plate 133, Series 1969B, Serial Number H34906139A; or with intent to injure or defraud did utter and publish as true the said falsely altered, forged," etc.

After a full explanation of the legal consequences, the appellants, Jones and Weatherford, each, separately, and their attorneys, did agree to a joint trial of this cause. The Jury brought in separate verdicts, each of which found the appellant guilty as charged. The trial court then entered separate judgments in which each of these two appellants, Jones and Weatherford, was sentenced to eighteen years imprisonment in the penitentiary.

On February 22, 1973, between 10:30 and 11:00 a. m., Mrs. Frances Zills, a clerk at Clark-Freeman's Department Store in Moulton, Alabama, sold two men's shirts to a man, whom she later identified as one Billy Lee Bastin. She stated that Bastin paid her with a "different looking" twenty dollar bill. She stated that she placed the two shirts in a Clark Freeman shopping bag; that she also placed the sales slip inside the bag. One of the shirts was a shade of blue, and the other was tan. She stated that within ten or fifteen minutes of making this sale, Deputy Sheriff Kenneth Brown and one Parnell Lovett, a Federal ATU Agent, entered the store. After identifying themselves as law enforcement officers, she showed the twenty dollar bill to them. From the record:

"Q. And I believe you said this was a Thursday?

"A. Yes, sir.

"Q. The best that you can recall?

"A. It was a Thursday morning.

"Q. Okay. I believe you said that ten to fifteen minutes transpired from the time that you made the sale until the time that you saw Mr. Parnell and Mr. Brown; is that correct?

"A. Yes, sir.

"Q. This Twenty Dollar Bill I believe you said that looked different or something to you, you went ahead and put it in the cash register, did you not?

"A. Yes, sir. Before I put it in the register, I showed it to Mrs. Hazel, and I told her, I said, 'This money doesn't look like our other money.' But I had no way of knowing the money wasn't right. I just showed it to her and I still didn't know that the money wasn't, you know, like it should be. So I asked her, I said, 'What do you think about it?' "

Auxiliary Deputy Sheriff Kenneth Brown testified that he was standing in a grocery store near the Clark-Freeman's Store and observed the appellant Jones sitting in a green 1965 Chevrolet automobile with a Tennessee license plate. He testified that Jones appeared to be very nervous, that he saw Bastin get out of the automobile, go into the store, then return in just a few minutes with a shopping bag. He stated that he had been watching the car in question for some time before Bastin entered the store. He stated that he saw Bastin get into the car with appellant Jones, and that he wrote down the tag number of the vehicle. He stated that neither he nor Federal ATU Agent Parnell Lovett saw anyone else go in or out of the Clark-Freeman's Store, and that within a few minutes they both entered the store, and Mrs. Zills exhibited the twenty dollar bill in question to them. He noticed that the twenty dollar bill was different in color and texture from other twenty dollar bills. He stated that the officers then gave a description of the men and the Chevrolet automobile over the two-way sheriff's radio. Deputy Brown further testified that he went before Intermediate Court Judge Cecil Caine, Jr., for a search warrant.

The affidavit is as follows:

"AFFIDAVIT FOR SEARCH WARRANT

"STATE OF ALABAMA, ⎫
LAWRENCE COUNTY. ⎭

"Before me, C. B Caine, Jr., Judge of the Intermediate Court of Lawrence

County, Alabama, personally appeared Kenneth Brown, who, being by me first duly sworn, deposes and says that he is an Auxiliary Deputy for the Lawrence County Sheriff's Department and that he, individually, and as such officer, has probable cause to believe and has reason to believe and does believe that certain altered, forged, or counterfeited twenty dollar Federal Reserve notes or twenty dollar bills are concealed or stored in the trunk, under the seats, in the glove compartment, in the floorboard, or elsewhere in one 1965 green Chevrolet automobile bearing a 1972 Tennessee tag number 89–C539, presently parked in the Lawrence County Sheriff's parking lot behind the Lawrence County Jail. Affiant bases his information and belief on the following facts:

"That at or around 10:30 on February 22, 1973 affiant stopped at the Value Mart in Moulton, Alabama and went into see his wife who manages the store. At the time affiant observed a man with reddish brown bushy hair, wearing a brown colored coat and dark glasses, sitting in a 1965 green Chevrolet automobile across the street from the Value Mart. Affiant's attention was attracted to this man because he appeared to be nervous. Affiant continued to observe this man for an hour and fifteen minutes from inside the Value Mart. The man affiant was watching moved his car and parked it in front of the Value Mart next to affiant's wife's automobile. During all of this time affiant observed the man drinking out of a cup. The man continued to act in an abnormal and nervous manner and continuously looked around in every direction. Affiant crossed the street and wrote down the man's tag number. It was a 1972 Tennessee license plate number 89–C539. Affiant went back to the store and advised his wife that he was going to the Sheriff's Department and check this tag and further advised his wife to continue to observe the man and to lock the door

if he got out of his car and started toward the Value Mart. Affiant then proceeded to the Lawrence County Sheriff's office and met Parnell Lovett, an agent for the Federal Alcohol, Tobacco and Firearms Division. Affiant and Lovett proceeded back to the store. Affiant's wife informed them that while he was gone the bushy haired man in dark glasses, whom they had been watching, got out of the Chevrolet automobile and walked into Clark-Freeman's Department Store across the street and down the block and that the man came out in a few minues carrying a package that was about the size of two shirts. Affiant's wife advised affiant that the man then proceeded back to the aforesaid Chevrolet automobile and got in. Affiant and Lovett observed the man still in the automobile and then went back to the Sheriff's Department and changed automobiles. When affiant and Lovett returned, they parked south of the Value Mart in the next block where they could observe the Chevrolet automobile. Affiant observed the man he had been watching cross the street from the Piggly-Wiggly parking lot and get into the Chevrolet automobile and start to pull off. At this time affiant observed a second man sitting next to the driver in the Chevrolet automobile. The Chevrolet automobile passed through the first red light, passed the Court House, and turned right at the second red light. Affiant and Lovett turned right at the Town House Restaurant so that both automobiles were proceeding in an easterly direction. Affiant and Lovett turned left at the next intersection and stopped at the red light on the southeastern corner of the square. At this time they observed the aforesaid Chevrolet automobile meeting them at the red light. Also, at this time affiant observed that the second man, who was the passenger in the Chevrolet automobile, had disappeared. Affiant and Lovett then proceeded to Clark-Freeman's Department Store, went in, and met Maxie Zills, the

clerk on duty. Mrs. Zills advised affiant and Lovett that a man with bushy reddish brown hair and wearing a brownish colored jacket and dark glasses and otherwise matching the description of the man affiant had been observing had just purchased two men's shirts and had given her a twenty dollar bill in payment for said shirts and she had given him change. Mrs. Zills identified the twenty dollar bill that the man had given her and presented it to affiant. Mrs. Zills was certain that the bill in question was the bill presented to her by the man in question because it was the last twenty dollar bill she had accepted and she remembered putting it on the top of the twenty dollar bills in the cash drawer and that the man in question was the last customer who had purchased anything. Upon observing the bill affiant determined that it was an obvious counterfeit twenty dollar bill proposing to be legal tender of the United States of America. Although similar to an authentic bill, the bill in question was not of the same obvious color, texture and did not have all of the authentic markings. Affiant then proceeded to the Value Mart and his wife advised him that, after affiant and Lovett left the Value Mart the last time, she observed the man in question leave the Chevrolet automobile, proceed across the street to the Piggly-Wiggly parking lot and get into a bluish gray Lincoln automobile with another man and that after a few minutes the man in question returned to the Chevrolet automobile, got in and left. With this information affiant and Lovett proceeded back to the jail and gave this information to the Sheriff's office. The description and tag number of the automobile was broadcast over police radio together with information that the above-described individual in the above-described automobile was suspected of passing counterfeit money. Shortly thereafter the man in question in the above-described Chevrolet automobile was apprehended on North Market Street in Moulton by James Farris, Chief of Police at Moulton, Alabama. After stopping the man, Farris observed one can of Pabst Blue Ribbon beer in the floorboard of the back seat of said automobile. The individual in question was then arrested for illegal possession of beer and placed in the Lawrence County Jail. The man in question produced a driver's license bearing the name of William W. Jones and claimed to be William W. Jones. The Chevrolet automobile was taken to the Lawrence County Sheriff's parking lot behind the jail where it remains locked. Also observed in the back seat of said Chevrolet automobile was a plaid coat, several cartons of cigarettes and several paper sacks that appeared to be full.

"Based on the above information your affiant requests that a search warrant be issued authorizing the search of the above-described Chevrolet automobile heretofore belonging or in the possession of William W. Jones for altered, forged, or counterfeit twenty dollar Federal Reserve notes or treasury notes or twenty dollar bills.

"Kenneth W. Brown
AFFIANT

"Sworn to and subscribed before me this 22nd day of February, 1973.

"C. B. Caine, Jr.
JUDGE OF THE INTERMEDIATE COURT

"SEARCH WARRANT

"STATE OF ALABAMA,
LAWRENCE COUNTY.

"Proof by affidavit having been made this day before me, by Kenneth Brown, an Auxiliary Deputy for the Lawrence County Sheriff's Department, that he has probable cause to believe and does believe that one William W. Jones, whose name is otherwise unknown has con-

cealed in one 1965 green Chevrolet automobile, bearing 1972 Tennessee license plates 89–C539, one or more counterfeit twenty dollar United States Treasury notes, Federal Reserve notes, or twenty dollar bills contrary to law, said automobile being now located in the parking lot behind the Lawrence County Sheriff's office.

"You are hereby commanded to make immediate search, in the daytime, of the above-described automobile at the above-described location for one or more counterfeit twenty dollar Federal Reserve notes, Treasury notes or other legal currency of the United States Government and, if you find the same or any part thereof, to hold, retain and dispose of same, according to law and the further order of the Court, and you will make return thereof to the Intermediate Court Judge of Lawrence County, Alabama, of all your acts and doings, under this warrant.

"Witness my hand as Intermediate Court Judge of Lawrence County, Alabama, this 22nd day of February, 1973.

"C. B. Caine, Jr.
JUDGE OF THE INTERMEDIATE COURT
"Returned this 2/29/73.
"C. B. Caine, Jr.        DX–2"

Deputy Sheriff Kenneth Brown further testified that he assisted Sheriff Dan Ligon and Sheriff's Investigator Edsel Moore in a search of appellant Jones' Chevrolet automobile, which took place at the courthouse following his arrest and the obtaining of a warrant [R. 140–141].

Deputy Brown further testified that appellant Jones was arrested by Police Chief James Farris, who answered a police radio call, intercepted the appellant Jones driving the light green Chevrolet automobile, and then brought him and the vehicle to the county jail.

Chief Farris testified that he had been advised over the radio that the appellant, Jones, was wanted for investigation and passing "counterfeit money," and that when he stopped him, the appellant stated that he did not wish the vehicle to be searched, so he directed them to follow him to the jail.

Chief Farris further testified that in looking into the vehicle, he observed a can of Pabst Blue Ribbon beer in an open paper sack, in plain view. He further stated that he was present later that afternoon when the vehicle was searched by Sheriff Ligon at the jail. He testified that he "put Jones under arrest for possession of beer."

Mrs. Mary Jane Brown testified that she was the wife of Deputy Kenneth Brown, and was working at the Value Mart Dollar Store on February 22, 1973. She stated that she looked out of the window and observed the vehicle parked next to hers; that it was a green Chevrolet with a Tennessee license plate. She stated that the driver of this car appeared to be real nervous. She stated that a short time later a third man driving a blue-gray Lincoln automobile, and with shoulder-length hair, parked near the Chevrolet. She observed appellant Jones as he got out of the Chevrolet, went over to the Lincoln automobile, got in, and talked with appellant Weatherford. She further stated that the man she observed getting out of the Chevrolet and going into Clark-Freeman's Store was not appellant Jones, who had remained in the car, and it was not the driver of the Lincoln (Weatherford). Mrs. Brown further testified that she notified her husband, Deputy Brown, that morning of this incident.

Mrs. Marie Webb testified that on February 22, 1973, she was employed at Ben Franklin Store in Moulton. She stated that on this morning, she sold to a man, whom she could not identify, a ballpoint pen and two staplers; that she was paid by a different looking twenty dollar bill. She

further identified, at trial, a department store bag, the ballpoint pen, and the two staplers. She further testified that the bank was closed on Thursday, and that she made up her deposit for the next morning. From the record:

"A. And that was on Thrusday and we close on Thursday at lunch during that time of the year. At that time of the year we were closed at lunch on Thursday. When I checked the register out, I noticed a Twenty Dollar Bill that the coloring was different from the other Twenty Dollar Bills.

"Q. And you noticed that before you locked up and left there at lunch or at noon on Thursday?

"A. Yes, sir.

"Q. All right."

She could not identify the man who had given her the twenty dollar bill, which she subsequently described to the investigating officers.

Mrs. Noah Dell Allen testified that on February 22, 1973, she worked in David Lee's Dry Goods Store in Moulton. She testified that shortly before noon a man came in, whom she did not know, she sold him one blue shirt, and placed it in one of their shopping bags. She stated that he paid her with a twenty dollar bill, and she made change from it. At trial, she identified the shopping bag, the shirt, and also the twenty dollar bill, which she had delivered to Sheriff's Investigator Edsel Moore the following morning. She also identified her initials on the twenty dollar bill. She stated that she could not positively identify the man to whom she had sold the shirt.

Chief Deputy Wade Whitlock, Jr., testified that on the morning of February 22, 1973, he was on duty at the sheriff's office, and did, at the request of Deputy Brown, give a description of the two vehicles and the men over the radio. He stated that the Lincoln Continental was a cream color with a light brown top, and he gave the Arkansas license number on it. He stated that the Chevrolet was green and gave the Tennessee license number on it. He talked by radio with Chief of Police Farris. He stated that Chief Farris acknowledged his call, and replied, "I am right behind a green Chevrolet at this time." He advised him to stop the car. He stated that he was advised subsequently by Chief Farris that appellant Jones was alone in the Chevrolet and that he was bringing him in on a charge of possession of beer. He stated that he went out to assist Chief Farris and drove the vehicle of appellant Jones back to the county jail; that he observed a white envelope lying on the seat. He stated that there were three or four shopping bags on the seat, and that you could see such things as cigarettes and clothing inside. He stated that he gave appellant Jones a *Miranda* warning from a card, that the appellant stated he did not want the car to be searched without a warrant. He stated that he and Chief Farris placed a charge of illegal possession of beer against Jones and took him to the county jail.

Deputy Sheriff Brown's testimony was corroborated at trial by that of Federal ATU Agent Parnell Lovett. He stated that he was on duty in Moulton on February 22, 1973, that he observed appellant Jones driving the Chevrolet, that he parked it near the square. He further observed Bastin get out and go into the Clark-Freeman Store and return with the shopping bag. Prior to this, he and Deputy Brown had observed a Lincoln Continental with an Arkansas tag in Moulton. He further testified that he was present at the jail when the Lincoln automobile was brought in with two men, Bastin, and appellant Weatherford, in it, that the men stated they were looking for appellant Jones. Bastin was wearing a brown shirt, which was subsequently identified as the one that had been sold at the Clark-Freeman De-

partment Store, when he came to the jail. Agent Lovett also stated that he was present when Sheriff Ligon searched the Chevrolet, and that a white envelope was observed on the front seat which contained counterfeit twenty dollar bills, some twenty-six in number. He stated that he and Deputy Brown were present while the sheriff personally removed the articles from the Chevrolet, and they were inventoried by Investigator Edsel Moore.

United States Secret Service Special Agent John M. Jackson testified that he went to Moulton on the morning of February 23, 1973, in response to a call from Sheriff Ligon. He testified that he went to the David Lee Department Store and was given a counterfeit twenty dollar note by Mrs. Allen, who initialed it in his presence at the store. He further testified that he fingerprinted three men whose names were, Billy Lee Bastin, William Wiley Jones and Bobby Lee Weatherford, at the county jail.

Sheriff Dan Ligon testified that he searched the 1965 green Chevrolet, bearing a Tennessee license tag, in the late afternoon of February 22, 1973, at the county jail, pursuant to a search warrant issued by Judge Caine. He testified that he observed a white envelope on the front seat, addressed to William Jones. This envelope contained twenty-six counterfeit twenty dollar bills. He further testified that in a large brown paper bag, which contained some instant coffee, he found a stack of 175 twenty dollar bills; that in another wrapped stack there were three wrapped bundles, one containing 82 twenty dollar bills, the second containing 125, and the third containing 74, making a total of $9,640.00 in counterfeit twenty dollar bills. He stated that on the rear floorboard of the vehicle was a brown bag which contained one blue shirt, and that the bag had the name of David Lee's Department Store on it; that in another brown bag he found two cartons of Winston cigarettes and two staplers. He further testified that in a

third open brown bag was a can of Pabst Blue Ribbon beer with a Tennessee tax stamp. He testified that the twenty dollar bills were subsequently delivered to United States Secret Service Agents. He stated that also in the Chevrolet was a motor vehicle registration for this car, showing a Tennessee license number, 89–C539, 1965 Bel Aire four-door, the certificate of registration being issued under date of January 22, 1973, to Billy Bastin of Route 2, Linden, Tennessee.

Sheriff Ligon also testified that subsequently that afternoon, Billy Bastin and the Appellant, Bobby Lee Weatherford, drove up to the county jail, and that following a conversation in front of the jail, both men told him to go ahead and search the Lincoln Continental. He stated that from this car he removed a Clark-Freeman Department Store shopping bag, and inside was a sales slip dated February 22, showing a sale of two men's shirts for $4.24; that a blue Van Heusen man's shirt was still inside the bag. He stated that Billy Bastin was wearing a brown shirt when he came to the jail, which shirt was subsequently identified as having been sold that morning, along with the blue shirt, to Bastin, by Mrs. Zills.

Lawrence County Sheriff's Investigator Edsel Moore testified that he and Auxiliary Deputy Brown were present with ATU Agent Lovett and another officer when Sheriff Ligon searched the 1965 Chevrolet belonging to Bastin at the jail, following the issuance of the search warrant by Judge Caine. Investigator Moore identified the inventory of items removed from the Chevrolet, driven by appellant Jones at the time of his arrest. He further testified that the following day he accompanied Special Agent Jackson, and McCreliss of the United States Secret Service, to the David Lee Department Store where Mrs. Allen turned over a twenty dollar bill in his presence to them.

United States Secret Service Agent George D. Hudson, Jr., testified that he

accompanied Special Agent McCreliss to Moulton, Alabama, on February 23, 1973, that at the jail, a *Miranda* card was read to appellant Weatherford before interviewing him, that following this, appellant Weatherford replied under questioning:

"A. Actually, I don't remember him saying specifically that they came to Moulton together. As I have stated, he just mainly said that they were on a trip together, the three of them, and that Mr. Bastin and Mr. Jones had plenty of money to spend, and they were spending money and he was just riding with them.

"Q. Did he tell you where he got with them?

"A. No, sir, he didn't state a city, to my knowledge.

Agent Hudson further testified that also that morning he likewise read a *Miranda* card to appellant Jones at the county jail, and that the appellant then gave the following statement:

"A. Well, he lived in Forrest City, Arkansas. He told us this when we obtained a personal history information, but to my knowledge he just referred to —came by his house. They came by, as I said, at approximately Twelve Noon on February the 21st and asked him if he would like to go on a trip and pass some counterfeit money. And then on February the 22nd at about 3:00 A.M. in the morning they came back in two automobiles, and he went with them and they went on a trip, left headed for Florida, is what he stated, to pass counterfeit money. He said he did not know how much counterfeit money they had, nor did he know how much they paid for it, but that the profit, after the price of the counterfeit money was deducted from the cost of it, the profit would be split three ways between Mr. Bastin and Mr. Weatherford and Mr. Jones.

"Q. Now, he said they started from his home?

"A. Well, he just said they picked him up.

"Q. Came back the next day?

"A. Yes, sir.

"Q. Where did they pick him up from?

"A. Well, specifically, as I recall, they said that they came back at 3:00 A.M. in the morning to his house."

Agent Hudson then, having been qualified as to his training and experience in identifying counterfeit currency, testified that, following his analysis of the monies turned over to him by Sheriff Ligon and Investigator Moore, 483 twenty dollar bills were counterfeit.

The State then presented the testimony of United States Secret Service Fingerprint Specialist Robert L. Ball, who identified the fingerprints of appellant Jones, Weatherford, and also Billy Bastin.

Neither appellant presented any testimony at trial.

I

The appellants first contend that Deputy Brown and ATU Agent Lovett lacked probable cause to obtain the search warrant in question from Judge Caine. We do not agree. It is clear from the circumstances outlined in the affidavit and testimony that such was obtained based upon the personal observations of these two officers, and such was reasonable under the circumstances.

In Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, the court stated:

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof

is accordingly correlative to what must be proved.

" 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' McCarthy v. De Armit, 99 Pa. 63, 69, quoted with approval in the Carroll opinion. 267 U.S. at page 161, 45 S.Ct. at page 288, 69 L.Ed. 543, 39 A.L.R. 790. And this 'means less than evidence which would justify condemnation' or conviction * * *"

It is clear under the testimony of the two officers that the requisite probable cause existed in the case at bar. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; Daniels v. State, 290 Ala. 316, 276 So.2d 441; Miller v. State, 51 Ala.App. 303, 285 So.2d 113, cert. denied 291 Ala. 793, 285 So.2d 117; Rutherford v. State, 48 Ala.App. 289, 264 So.2d 210, cert. denied 288 Ala. 750, 264 So.2d 214.

## II

Appellant next contends that the warrant was defective in that it was not properly executed since same "was not directed to anyone." Title 15, Section 100, Code of Alabama 1940, is as follows:

*"Definition of warrant.*—A search warrant is an order in writing in the name of the state, signed by a magistrate, directed to the sheriff, or to any constable of the county, commanding him to search for personal property, and bring it before the magistrate."

Title 15, Section 106, Code of Alabama 1940, is as follows:

*"Warrant executed by whom.*—The warrant may be executed by any one of the officers to whom it is directed, but by no other person, except in aid of such officer, at his request, he being present and acting in its execution."

The warrant in question, issued by Judge Caine, uses the language "You are hereby commanded to make an immediate search in the daytime," of the above-described automobile, etc.

In State v. Stone, 233 Ala. 243, 171 So. 366, the Alabama Supreme Court, in construing Section 106, held:

"The sheriff has the duty to execute the search warrant issued under section 4741 (see sections 4744, 4747, 5475, 5477). . . ."

■ Moreover, it is clear that, though the warrant in question lacks the language, "To the sheriff or any constable of said county," but instead uses the language "You," from the testimony, Sheriff Ligon did in fact execute the warrant in question, and was assisted by Investigator Moore, who made the return to the warrant. Moreover, Auxiliary Deputy Brown and ATU Agent Lovett were present and assisted. Also, Police Chief Farris and other deputies were present. We therefore hold that the warrant in question was properly executed in this cause. See Ott v. State, 35 Ala.App. 219, 46 So.2d 226; cf., Booth v. State, 22 Ala.App. 508, 117 So. 492; 79 C.J.S. Searches and Seizures § 83, page 897.

## III

During the qualifying of the jury venire, the trial court asked the prospective jurors if any of them were related by blood or marriage to either of the appellants. The trial court then requested the appellants to stand so the members of the venire could see them. The appellants' counsel then made the following motion [R. 58]:

"MR. ROGERS: Judge, I move at this time that the Defendant, Weatherford, be granted a mistrial in this case on the basis that his constitutional rights of self incrimination has been violated when he was called by the Court to stand and present himself to the jury venire.

"THE COURT: Overruled.

"MR. ROGERS: We take exception.

"MR. CHENAULT: We make the same motion on behalf of William Wiley Jones.

"THE COURT: Overruled.

"MR. CHENAULT: We reserve an exception."

Appellants' counsel contends that the trial court erred in requiring the two appellants to stand, as this, in effect, required the appellants to "give evidence against themselves."

The Supreme Court of the United States, in Schmerber v. California, 384 U. S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, spoke directly to this contention, as follows:

" . . . The leading case in this Court is Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021. There the question was whether evidence was admissible that the accused, prior to trial and over his protest, put on a blouse that fitted him. It was contended that compelling the accused to submit to the demand that he model the blouse violated the privilege. Mr. Justice Holmes, speaking for the Court, rejected the argument as 'based upon an extravagant extension of the 5th Amendment,' and went on to say: '[T]he prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof.' 218 U.S., at 252–253, 31 S.Ct., at 6.

"It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746. On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it."

██ It is clear, therefore that the trial court merely required the two appellants to stand for purposes of identification before the venire. This was not a violation of the appellants' privilege against self-incrimination, as herein above pointed out. Schmerber v. California, supra; United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67; Hubbard v. State, 283 Ala. 183, 215 So.2d 261.

## IV

The appellants contend that the trial court erred in not excluding the testimonies of Mrs. Webb [R. 180] and Mrs. Allen [R. 191] on the basis that neither of these salesladies could identify the man to whom the sales were made on the morning of February 22, 1973, and that, therefore, their testimonies did not establish a material fact in the cause.

In Hill v. State, 207 Ala. 444, 93 So. 460, the rule governing circumstantial evidence is stated thusly:

"Circumstantial evidence may afford satisfactory proof of the corpus delicti; and if any facts are shown from which the jury may reasonably infer that the crime has been committed, the question must be submitted to the jury, and other evidence tending to implicate the accused

**178**

is thereby rendered admissible. Cases, supra; Matthews v. State, 55 Ala. 187; Ryan v. State, 100 Ala. 94, 14 South. 868."

Most recently, our Supreme Court, in Hollenquest v. State, 290 Ala. 146, 274 So. 2d 613, stated:

" . . . [B]ut a conviction of crime in this state may be had on circumstantial evidence which is so strong and cogent as to show defendant's guilt to a moral certainty. James v. State, 22 Ala. App. 183, 113 So. 648 (1927). Such is the case here. . . . "

■ Mrs. Webb testified at trial that she sold a ballpoint pen and two staplers to an unidentified man on February 22, 1973, while on duty at Ben Franklin Store She further testified that she received a twenty dollar bill, which was "different in coloring and looks from any other." She also stated that the bank was closed on Thursday, and she noticed this twenty dollar bill when making up her deposit on Friday morning, February 23, 1973; that she had locked up before leaving at noon on Thursday, the 22nd. She also identified the two staplers and ballpoint pen.

We hold that her testimony was properly admitted in this cause. [Cases cited.]

Mrs. Allen testified that she sold an unidentified male a man's blue shirt on the morning of Thursday, February 22, 1973, while working at David Lee's Department Store, and she subsequently identified the shopping bag and shirt at trial. She further testified that she had received a different looking twenty dollar bill from which she had made change. She further testified that the following morning she turned over this twenty dollar bill to Sheriff's Investigator Edsel Moore and other officers, and placed her initials on it. She testified that the purchase price of the man's shirt was $2.99, plus tax.

Under the authorities herein cited, it is clear that the trial court properly submitted her testimony to the jury.

V

At the conclusion of the trial court's extensive oral charge, the following appears [R. 547]:

"Gentlemen any motions or exceptions:

"MR. PETTUS: No, sir.

"MR. ROGERS: No, sir."

The appellants contend that the refusal of the following three charges was error. From Appellant's brief:

"*Appellant Jones*

"12 'The Court charges the jury that the test of sufficiency of circumstantial evidence in a criminal case is whether the circumstances as proven are capable of explanation upon any reasonable hypotheses consistent with the defendant's innocence, and, if they are capable of any such explanation, then the defendant should be acquitted.' (p. 558).

"*Appellant Weatherford*

"4. 'I charge you the Jury that the burden is on the State to prove to you beyond a reasonable doubt and to a moral certainty that Bobby Lee Weatherford took part in the commission of the forgery as charged and no matter how strong the circumstances, if these circumstances can be reconciled with the theory that some other person may have done the act for which Bobby Lee Weatherford is charged, then he is not shown to be guilty, by the full measure of proof which the law requires.' (p. 562).

"13. 'I charge you the Jury that the human provisions of the law are, that a defendant, charged with a felony, should not be convicted on the evidence, unless it shows by a full measure of proof that the defendant is guilty. Such proof is

always insufficient, unless it excludes, to a moral certainty, every other reasonable hypothesis, but that of the guilt of the accused. No matter how strong the circumstances, if they can be reconciled with the theory that some other person may have done the act, then the defendant, Bobby Lee Weatherford, is not shown to be guilty, by that measure of proof which the law requires.' (p. 561)."

In Minor v. State, 15 Ala.App. 556, 74 So. 98, refused Charge No. 12, there 11, was held properly refused as being not predicated on a consideration of all of the evidence in the case. This charge was for the same reason in Crumbley v. State, 26 Ala.App. 24, 152 So. 55, also held properly refused.

 This same charge was also held to be properly refused in Haygood v. State, 252 Ala. 3, 38 So.2d 593, since all of the evidence was not circumstantial. It is clear, therefore, under the authorities herein cited that the trial court properly refused to give Charge No. 12.

Refused Charge No. 4 was held to be abstract in Cowart v. State, 11 Ala.App. 102, 65 So. 666, since, as in the case at bar, there were eye witnesses to certain of the circumstances. In Jackson v. State, 272 Ala. 566, 133 So.2d 210, such a charge was held properly refused since it is not based upon consideration of all of the evidence. Under these authorities, and the evidence in this cause, Charge No. 4's refusal was proper.

Refused Charge No. 13 was held to be properly refused in Johnson v. State, 42 Ala.App. 511, 169 So.2d 773, where, as here, so little of the State's case derives from circumstantial evidence. Moreover, such charge does not call for consideration of all of the evidence. Its refusal was therefore proper.

We have carefully examined this record in this cause, being in three volumes, containing 574 pages, as required by Title 15, Section 389, Code of Alabama 1940, and fine no error therein. The judgment is due to be and the same is hereby

Affirmed.

CATES, P. J., and ALMON, HARRIS and DeCARLO, JJ., concur.