317 So.2d 548

Charles Leon JOHNSON

v.

STATE.

8 Div. 422.

Court of Criminal Appeals of Alabama.

July 29, 1975.

Joe Gilliland, Russellville, for appellant.

William J. Baxley, Atty. Gen. and William A. Davis, Asst. Atty. Gen., for the State, appellee.

BOOKOUT, Judge.

Charles Leon Johnson was indicted September 21, 1972, by the Franklin County Grand Jury on two counts of first degree murder. Count I charged that he murdered Melvin Harbin and Count II charged that he murdered Wesley Harris. Trial commenced November 13 and ended November 14, 1972, with a verdict on Count I of guilty of second degree murder and sentence of 25 years; and guilty of first degree manslaughter under Count II with sentence fixed at 10 years. There was no order by the court for the sentences to run concurrently, therefore, the appellant received a combined sentence of 35 years.

This Court remanded with directions for the appellant to be considered for treatment as a youthful offender pursuant to *Morgan v. State,* 291 Ala. 764, 287 So.2d 914. The trial court· on June 20, 1975, filed its return to the remandment showing compliance with *Morgan,* supra, and denial of treatment as a youthful offender. We must now consider the appeal on the merits.

Cornell Cooper testified that on July 3, 1972, at around 9:00 A.M., he and his wife were driving throught the mining area of Franklin County when they saw Wesley Harris sitting by the side of the road naked and wearing only a pair of socks. Harris flagged for assistance, and the witness stopped and at the request of Harris, left and called the police and returned. The witness was with Harris when the police came and when the body of Melvin Harbin was found about a quarter of a mile down the mining road which intersected the county road where Wesley Harris had been sitting.

The witness stated that Wesley Harris had blood on his body, one eye was swollen closed, and he had bruises and scratches over his body. He said Harris was able to walk across the road and get into the police car to be taken to the hospital. The witness said Harris told him that some

boys had killed Harbin and thought they had killed Harris. John James testified that he was employed as a deputy sheriff of Franklin County on July 3, 1972, and arrived at the scene of the crime between 10:00 and 10:30 A.M. on that date. He observed a body located about half way down a hill next to a small pond of water. He then identified State's Exhibits 1, 2, 3, 4 and 5 as photographs substantially and accurately depicting the scene as it was on July 3, 1972. He stated that the District Attorney took the photographs exhibited. All five exhibits were introduced without objection.

The witness stated that the left foot of the body from the ankle down was in the water and that the body was not clothed. The witness identified three items of clothing, marked State's Exhibits 6, 7 and 8, which he had retrieved from the side of the ravine in which the body was then lying. He stated all three items of clothing were in substantially the same condition as when he found them, with the exception that at the time of the trial they were dry whereas the items had been wet when he found them. Defense counsel objected to the introduction of the three items of clothing on the ground that, "The proper predicate had not been laid." The court sustained the objection.

Carl Pride, a Russellville City Policeman, stated that on July 3, 1972, he was at the mining site where Melvin Harbin's body was found. He identified a shirt he found some thirty feet up the hill from where the body was located (State's Exhibit 10) and identified a piece of underwear found in the same general area (State's Exhibit 9).

Franklin County Coroner, Joe Newton, testified that he arrived at the scene around 10:00 A.M. on the date in question. He, likewise, observed the body in the ravine and observed various cuts and bruises about the face and head and scratches on the body. He stated he could tell from the mud that had settled in the wounds that the body had been in the water for some time. He observed three or four items of clothing between the water and the road and noticed from the appearance of the gravel that someone had fallen or had been dragged down the bank to the water.

Coroner Newton testified that the body was removed to the local funeral home and an autopsy was performed. He identified a photograph of the body (State's Exhibit 11). He, likewise, identified other photographs of the body taken by the State Toxicologist (State's Exhibits 12–14). He stated that Wesley Harris died a few days later and identifed photographs of that body (State's Exhibits 15–17). On cross examination, he stated that he had injected the embalming fluid in the Harbin body prior to the time the autopsy was performed.

James Hickman, Franklin County Deputy Sheriff, testified that he observed the body at the mining site around 11:00 A.M. He stated that he found a belt, a small belt clip, some strips of a tee shirt and possibly a sock at the scene. Sam Gibson, a Franklin County Deputy Sheriff, identified some articles of clothing that had been found at the mining site on July 3, 1972, (State's Exhibit 18). He estimated that the distance from the road down to the body was thirty or forty feet.

Franklin County Sheriff Swanson Hindman next testified for the State. He stated that the body of Melvin Harbin was in the pool of water when he arrived at the mining site. He identified State's Exhibits 10 and 18 and stated that he received State's Exhibits 6, 7, 8, 9, 10 and 18 from officers at the scene. He had observed some beer cans in the area and observed a blue Rambler station wagon on County Road 59 some time after the body was discovered.

Gladys Harbin identified State's Exhibit 11 as a photograph of the body of her deceased husband, Melvin Harbin.

John James was recalled as a witness for the State. He stated that on July 3, 1972, at approximately 9:30 P.M., he interviewed

the appellant in the interrogation room of the Franklin County Jail. He stated that before taking any statement from the appellant, he advised him of his right to remain silent; that anything he said could and would be used against him in a court of law; if he could not afford a lawyer, one would be appointed before any questioning; that he was asked if he waived his rights, and the appellant said he did.

The witness stated that the District Attorney was present at that time and asked the appellant if he understood his rights; would he waive those rights and talk about the case; that no one in the appellant's presence of hearing made any threats toward him to obtain a statement, nor did anyone make any offer of reward or promise or inducement of any kind to the appellant to obtain a statement. The witness stated that the appellant's statement was written down by the District Attorney; that the appellant looked on and read along as the District Attorney read it back to him, and the appellant had the District Attorney make two or three changes or corrections in the statement and then signed it.

At that point in the trial, the State offered the statement in evidence (State's Exhibit 19) and counsel for the appellant then objected for the first time to the admission of the statement on the ground that it had not been shown that the statement was taken after the defendant had been fully apprised of his constitutional rights. The court overruled the objection and entered the statement into evidence, whereupon the witness read it in open court. The witness then stated that it was his judgment that the appellant was not under the influence of either alcohol, narcotics or drugs at the time the statement was given. Appellant made no further objection to the statement and did not move to exclude it. A summary of the appellant's statement contained in the State's brief is here set out for purposes of brevity:

"In substance the confession said that the defendant, Danny Johnson and Becky, Danny's wife, left on Sunday afternoon, July 2, to go riding around. The threesome had been drinking beer when they went to the pond. When they got there, a blue Chevrolet station wagon with 3 men in it came up, and the driver and Charles Leon Johnson went swimming. Wes Harris was one of the three men. Harris had some wildcat whiskey which he shared with Charles Leon Johnson. Later in the afternoon these six people then left the pump pond with Danny Johnson driving the station wagon. They stopped at Piggy O'Neals and bought a half pint of wildcat. From there they went to another home and bought 3 cans of beer. On the way back to Russellville they turned off onto a mining road and turned down a road which wasn't blocked by a cable and parked the car on a hill. The defendant and one of the other men, a skinny man, (Melvin Harbin) went behind the car to relieve themselves. Wes Harris gave the defendant and Danny Johnson some pills. Danny and the skinny man got into a fight and the defendant and Wes Harris fought. Danny Johnson tore the skinny man's clothes off and rolled him over the bank and down a gully. Danny helped Leon take Wes Harris to the edge of the gully and the defendant ripped his pants off and cut his belt off before flipping him in the gully (R. pp. 50, 51)."

Becky Johnson testified that she was the wife of Danny Johnson and that she was present on July 2, 1972, with Danny and Charles Leon Johnson at a pond when Wesley Harris, Melvin Harbin and Charles Malone arrived in a blue station wagon. She said the appellant and Charles Malone went swimming and later became embroiled in an argument. Subsequently she, her husband, the appellant, Wesley Harris and Melvin Harbin left in her husband's car to buy some beer and whiskey. She said Wesley Harris told the appellant he

knew where he could get some drugs, however, she did not see appellant take any.

The group drove back to the mine headings and parked the car. Wesley Harris stated repeatedly that he could "fight a circle saw," whereupon the appellant told Harris to get out of the car because he was a circle saw. Some cursing took place and then tempers appeared to be cooling when Harris got out of the car. The appellant then pushed Harris down and each time he tried to get up, the appellant hit him in the stomach and the face and would kick him and stomp him. While all of this was happening, the witness was sitting on the hood of the automobile holding the appellant's beer for him.

She stated that after a while, her husband Danny went over to where Harris was lying on the ground and started kicking him also. Then her husband and the appellant took off their belts and started beating both Harris and Harbin. She said her husband then came back to the car, got the appellant's knife, and stated, they "was going to take off their clothes and everything and castrate them." She further stated, "Well after that, they said they tore their clothes off of them and I don't know whether they did or not, and the next thing I knew, Danny told me to get in the car and so I got in the car and I heard gravel something like sliding down the hill and I heard somebody hollering and then, Leon come back to the car and got his knife and then Danny and Leon, it took both of them to pull Wesley over to the bank and let him slide off of it."

The witness said Wesley Harris was begging the appellant to stop hitting him and Harbin. She did not see the clothing removed, however, she did see her husband and the appellant in possession of some pants, shirts and shoes. Her husband and the appellant then jumped in the car, and the three of them hastily departed the scene, driving the car through a cable which was blocking the road. On cross examination, she was allowed to read a sentence from a letter she wrote her husband while he was in jail which stated, "I swear Leon is going to take all the blame, after I get through." On redirect, she stated that her husband told her the appellant had stabbed Wesley Harris in the back with a small pocket knife.

Charles Malone testified that he was with Wesley Harris and Melvin Harbin on the date in question at the pump pond. Charles Leon Johnson, Danny Johnson and Becky Johnson arrived, and the witness and the appellant went swimming. After the swim, all the others parted company with the witness, and he was not present at the time of the altercation in question.

William O'Neal testified that Wesley Harris, Melvin Harbin, Danny and Becky Johnson and the appellant came to his home on July 2, 1972. He said Melvin Harbin asked him to call the police and complained to him that the others would not let him drive his car. V. J. Hacker testified that he was the brother-in-law of Danny Johnson, that between 8:30 and 10:00 P.M. on July 2, 1972, Danny and the appellant came to his home and told him they had been in a fight. They stated they had a fight with a couple of guys, that Danny Johnson hit one of them a couple of licks and the appellant said he whipped one of them pretty bad. The witness further testified:

"Well, they said they beat one of them up pretty bad and said they didn't know whether he was beat to death, but thought he was and the other said yes, so that's all. That's what they told me, but they was drunk, so I told them to go on home because I didn't pay them no attention."

Van Pruitt, Jr., a State Toxicologist, testified that he performed the autopsy on the body of Melvin Harbin on July 3, 1972. He identified the State's photographs of Harbin's body as being accurate. He described the abrasions, cuts and lacerations on the body, stated that the air passages were filled with a muddy fluid and silt. He testified that in his opinion, the cause of death was asphyxia or drowning.

Mr. Pruitt also testified that he performed the autopsy on the body of Wesley Harris on July 7, 1972. He identified the State's photographs of that body as being accurate. He, likewise, testified as to the lacerations, cuts, bruises and skinned areas of the body. The witness testified that the internal examination revealed a foul smelling substance in the abdomen and a perforation of the small intestine. He stated that in his opinion death was caused from peritonitis resulting from the rupture of the small intestine as a result of force exercised to the abdomen, either in the form of blows or injury. He testified on cross examination that peritonitis can be brought on by other means such as drinking. He stated that there was no bruising evident in the area in which the rupture occurred. Danny Johnson, husband of Becky Johnson, was called as a witness and testified concerning the fight. He testified that Wesley Harris offered him fifteen dollars to have intercourse with Becky Johnson. On cross examination, he stated that the appellant took some pills which Wesley Harris gave him. On redirect examination, the witness was asked if he found Becky in the back seat of the station wagon having intercourse with Wesley Harris, and he answered that he did.

Charles Leon Johnson, the appellant, took the stand and testified in his own behalf. He stated that he was eighteen years old, and testified to essentially the same facts covered by other witnesses up to the time of the actual fight. The appellant claimed the fight commenced when Danny Johnson found his wife Becky in the back seat of the station wagon having intercourse with Wesley Harris. He stated that Danny Johnson pulled Wesley Harris out of the car, that Harris' pants were down and at that time, the appellant jumped in and started fighting Wesley Harris. He stated that Harris swung back at him and picked up a rock and threw it at the appellant. He said he could not tell whether Danny was fighting with Melvin Harbin at the time as the appellant had his hands full fighting Wesley Harris.

Appellant stated that he knocked Harris off into the ravine, and he thought Danny knocked Harbin in. He stated that they took the pants and shirt off Melvin Harbin to prevent him from following them when they left and that on departing, both Harris and Harbin were alive and were cursing each other and the appellant.

On cross examination, the appellant stated that the District Attorney was present when he was interviewed by Officer John James at the County Jail. He said before he talked to Mr. James, the District Attorney advised him of his constitutional rights. He further stated that neither the District Attorney nor Officer James made any threats to him or offered him any promises or inducements in order to obtain a statement. The appellant stated that some parts of the confession were in error and denied certain parts when the statement was read to him at trial. Over objection, the State was allowed to ask the appellant if he had ever been convicted of a felony in Milam, Tennessee. The defendant answered, "If breaking and entering is a felony then I have been charged and convicted." On redirect, the appellant stated that he was thirteen years old when he was involved in the Tennessee incident.

The appellant called Beth Robinson as a witness. She testified that she was an employee of the Circuit Clerk's Office of Franklin County and that her records indicated that Wesley Harris had been convicted of second degree murder and of assault with intent to rob.

There was no motion to exclude the State's evidence, and no exception to the court's oral charge. The appellant requested twenty written charges which were refused, however, he did not request the affirmative charge. No motion for a new trial was filed. The record shows that the appellant dismissed his appeal on November 27, 1972, however, reinstated it by filing a notice of appeal on April 19, 1973. On June 19, 1973, the trial court appointed counsel to represent the appellant and or-

dered that he be provided with a free transcript on appeal.

## I

The appellant's first argument is that the State failed to prove the *corpus delicti*. Appellant argues that although the death of both Harbin and Harris was undisputed, the evidence failed to show that the death resulted from the criminal conduct or agency of appellant.

Appellant contends that the State Toxicologist's testimony did not show death to be the result of blows or abrasions; that Harbin died of asphyxiation and Harris died of peritonitis. Appellant further points out that the Toxicologist stated that drinking could have conceivably produced Harris' death and that the bruises and abrasions on his body would not be anticipated to produce death.

The testimony of Becky Johnson tends to establish that the deaths were the result of the criminal agency of the appellant and his accomplice Danny Johnson. She testified that the appellant and Wesley Harris were fighting; that appellant was hitting and kicking Harris; that he told her he was going to take the clothes off of the two victims and later said that he did so; that she heard something like gravel sliding and someone yelling; and that she also saw some articles of clothing apparently taken from the victims.

V. J. Hacker testified that the defendant and Danny Johnson both told him they had been in a fight and that they might have beaten one man to death. Wesley Harris told Cornell Cooper that some boys killed Harbin and that they thought they had also killed him (Harris).

The Toxicologist described the victims' bodies, showing them to be badly beaten with abrasions, cuts, bruises and scratches. The appellant testified that he did get into a fight with Harris and that he and Danny Johnson knocked Harris and Harbin off a drop, or into the pit. Proof of *corpus*

*delicti* may be established by circumstantial evidence. *James v. State*, 22 Ala.App. 183, 113 So. 648 (1927). In our opinion, the *corpus delicti* was proved through circumstantial evidence as well as through direct evidence and was sufficient to present a question for the jury. Where there is legal evidence from which the jury may by fair inference find guilt, this Court has no right to disturb such a finding, the weight and probative value of the evidence being for the jury. *Bolton v. State*, 21 Ala.App. 373, 108 So. 631 (1926); *Haggler v. State*, 49 Ala.App. 259, 270 So.2d 690 (1972).

## II

The appellant contends that reversible error was committed by allowing the District Attorney to ask if he had been previously convicted of a felony in Tennessee. The appellant cites *Sweatt v. State*, 156 Ala. 85, 47 So. 194 (1908), as holding that an accused charged with a violent crime, who had not introduced evidence of his good character may not be impeached by proof of his bad general reputation for violence. We do not see that *Sweatt*, supra has any application in the instant case. The appellant himself was being cross examined in the instant case pursuant to Title 7, §§ 434 and 435, Code of Alabama 1940, touching on his prior conviction of a crime. Counsel for the appellant interposed a general objection, and the trial court overruled.

The trial court could not be put in error in this instance since the question asked the appellant would not have been subject to a general objection. See: *Castleberry v. State*, 135 Ala. 24, 33 So. 431 (1902).

## III

Appellant's requested charges 1, 3, 4, 5, 6, and 12, concerning circumstantial evidence were refused by the trial court. It is the contention of the appellant that those charges were not covered in the court's oral charge and considering the evi-

dence in the case, it was very necessary that the court explain the use of circumstantial evidence to the jury.

Not all the evidence presented was circumstantial. In *Jones v. State*, 54 Ala. App. 167, 306 So.2d 33 (1974), affirmed 293 Ala. 762, 306 So.2d 45 (1975), this Court held similar charges properly refused where not all of the State's case derived from circumstantial evidence and where the requested charges did not call for consideration of all of the evidence. We find *Jones*, supra, and the cases cited therein to be ample authority to support the trial court's refusal of such charges in the instant case.

### IV

 The appellant contends that the trial court erred in admitting into evidence certain photographs of the two victims taken at the time of the autopsy. Each photograph was identified by witness Van Pruitt, Jr., Toxicologist with the State Department of Toxicology and Criminal Investigation. Mr. Pruitt testified that he was present when each photograph was made and that each substantially and accurately depicted the condition of the bodies at the time he examined them. The photographs were used by Mr. Pruitt to illustrate his testimony in describing the wounds on the two bodies.

Photographs which are properly identified and authenticated may be introduced into evidence, even though gruesome in nature, where they are relevant to show wounds inflicted. The photographs in question were identified and authenticated by witness Van Pruitt, Jr., were used to show wounds inflicted on the two bodies, were illustrative of his verbal testimony and were thus relevant and admissible. *Layne v. State*, 54 Ala.App. 529, 310 So.2d 249 (1975) and cases cited therein; *Cook v. State*, 52 Ala.App. 159, 290 So.2d 228 (1974); *McHugh v. State*, 53 Ala.App.

473, 301 So.2d 238 (1974); *McKee v. State*, 253 Ala. 235, 44 So.2d 781 (1950); *King v. State*, 43 Ala.App. 628, 198 So.2d 308 (1967).

### V

All the grounds argued by appellant as grounds for reversal have been considered in the light of the record, briefs and arguments of counsel. The record discloses that the case was fairly tried and that the verdict and judgment are supported by the evidence and the law. We have searched the record for error as required by statute and find that the rulings of the trial court do not constitute harmful error.

Affirmed.

TYSON, HARRIS and DeCARLO, JJ., and SIMMONS, Supernumerary Circuit Judge, concur.

CATES, P. J., not sitting.