**323 So.2d 116**

**In re John C. MULLINS**

v.

**STATE of Alabama.**

**Ex parte John C. Mullins.**

**SC 1239.**

Supreme Court of Alabama.

Nov. 6, 1975.

Rehearing Denied Dec. 18, 1975.

James T. Gullage, Opelika, for petitioner.

William J. Baxley, Atty. Gen., and J. Donald Reynolds, Sp. Asst. Atty. Gen., for the State, respondent.

PER CURIAM.

On preliminary examination, the petition for the writ of certiorari to the Court of Criminal Appeals, 56 Ala.App. 460, 323 So.2d 109, was granted. Upon further consideration, we hold that the writ was improvidently granted and is due to be quashed.

Writ of certiorari quashed.

HEFLIN, C. J., and MERRILL, BLOODWORTH, MADDOX, SHORES and EMBRY, JJ., concur.

FAULKNER and JONES, JJ., dissent.

ALMON, J., not sitting.

JONES, Justice (dissenting):

I would grant the writ.

John C. Mullins was convicted of selling marihuana to an undercover policeman and sentenced to 15 years in the penitentiary. Prior to trial, Mullins' motion to be treated as a youthful offender (he was 19 years of age) was denied without compliance with the provisions of the Youthful Offender Act. Accordingly, the Court of Criminal Appeals reversed and remanded the cause for compliance with the requirements of the Act. After the investigation and hearing, youthful offender status was again denied by the trial Court, and Mullins' former conviction as an adult, upon further review by the Court of Criminal Appeals, was affirmed.

On preliminary consideration, we granted the writ of certiorari to the Court of Criminal Appeals on the limited issue of the propriety of the trial Judge's response to the District Attorney's objection to defense counsel's remarks during summation to the jury.

During the trial, counsel for Mullins in his closing argument to the jury said: "I want to point out to you, now one matter of scripture and that is this. I am reading Second Corinthians the Thirteenth Chapter."

The State objected to counsel's reading the Bible to the jury on the ground that it was not evidence in the case. The following discourse transpired:

"MR. WRIGHT: Your honor I hate to interrupt the argument, but I think that it is improper for Mr. Gullage to read from the scripture, here, that is not in evidence in this case and it has nothing whatsoever to do with this case. And I think it's improper argument to read from the scripture.

"THE COURT: Well, Jesus Christ himself said, render unto God the things that are God's and render unto Caesar the things that are Caesar's. Now, I interpret that from the Bible to mean that when there are laws of the land a person is supposed to obey the laws of the land and render unto God the things that are God's, but render unto Caesar, that is the Government, the things that the Government has ordered and ordained.

"MR. GULLAGE: Your Honor, of course, I take exception to your remarks but I can't disagree with you.

"THE COURT: Well, do you disagree with Jesus Christ Himself, who said render unto God the things that are Gods, (sic) and render unto Caesar the things that are Caesar's?

"MR. GULLAGE: No, sir, I don't disagree with it I just take exception to the remarks of the Court—

"THE COURT: Well, now, maybe you are not as busy as I am, I work Saturdays, and Sundays, and nights, and every other time, and don't have a chance to go to Church, I'm down in my office ever (sic) Sunday—

"MR. GULLAGE: Your Honor, I'm not doubting what you say about that, I just except to the remarks by the Court to the jury.

"THE COURT: All right. Now, go ahead and read the bible to the jury, I'm a firm believer in Jesus Christ myself." [1]

Only one interpretation can be given to the trial Judge's remarks, "Now, I interpret that from the Bible to mean that when there are laws of the land a person is supposed to obey the laws of the land and ren-

---

1. It should be noted that the propriety of the trial Court's ruling is not the issue here presented.

der unto God the things that are God's, but render unto Caesar, that is the Government, the things that the Government has ordered and ordained." This could only have the effect of urging the jury to render up defendant Mullins to the government for his due punishment. Rather than limiting his response to the ruling on the District Attorney's objection, the trial Judge anticipated defense counsel's argument and responded in the nature of a reply. This is clearly a violation of the admonition that the trial judge should not assume an adversary role in the trial of which he is presiding.

In the trial arena, a wide and distinct line separates advocacy—the role assigned to trial counsel—from the functions of the presiding judge. It is the separation of these two roles that safeguards the fundamental fairness and impartiality mandated by the State and Federal Constitutions. To be sure, the myriad duties and responsibilities of the presiding judge necessarily vests in him much discretion in the conduct of the trial; but this discretion does not permit him to cross that line and in effect descend the bench and assume a role which the system in its wisdom has assigned to others. It is the sworn duty of the jury to follow the instruction of the trial judge, and thus his remarks in their presence must never be flavored with partiality as between the parties litigant. *Moulton v. State,* 199 Ala. 411, 74 So. 454 (1917); *Holland v. State,* 24 Ala.App. 199, 132 So. 601 (1931); *Dennison v. State,* 17 Ala. App. 674, 88 So. 211 (1921).

The opinion of the Court of Criminal Appeals, after correctly reviewing the law, concludes that the Judge's remarks were not intended as a reflection on defense counsel. The rule is not so limited and the error, in my opinion, here lies not in any reflections by the trial Court upon counsel, but in assuming an adversary role before the jury.

I do not interpret the denial of the writ by the majority as condoning the remarks of the trial Judge. Nor do I so interpret the opinion of the Court of Criminal Appeals. The majority simply feels that such remarks are not of such character as to constitute prejudicial error. I feel, however, that a disinterested trial judge is so fundamental to the constitutional guarantee of fair trial that this Court should not place a burden upon the defendant to demonstrate specificallly how such remarks prejudiced him. The possibility for prejudice is inherent whenever a presiding judge assumes an adversary posture, but specific proof of prejudice is always difficult in a jury trial. Because of the vital importance of conducting impartial criminal trials, I feel that prejudice should be assumed in this case.

FAULKNER, J., concurs.