[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 147 
The appellant, Douglas Edward Arnold, was convicted of first degree theft and was sentenced as a habitual offender to imprisonment for life. He was also ordered to pay $500 to the Crime Victims' Compensation Fund and to pay $370 in restitution. Six issues are raised in this appeal from his conviction.
 I
The appellant asserts that the indictment is defective in that it did not sufficiently inform him of the degree of theft with which he was charged. This argument is completely without merit.
Rule 13.2(b), A.R.Crim.P., provides that "[t]he indictment . . . shall state for each separate offense . . . the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." The indictment against the appellant was filed January 11, 1991, some ten days after the effective date of the current Alabama Rules of Criminal Procedure, including Rule 13.2(b). See Rule 1.5. This indictment charged, in pertinent part, that the appellant
 "did knowingly obtain or exert unauthorized control over one purse of the value of Two Hundred Eighty Dollars and Ninety Dollars of the lawful currency of the United States of America, a more particular description of which is to the grand jury otherwise unknown, the property of Lynne Swanson, which was taken from the person of Lynne Swanson, with the intent to deprive the owner of said property, in violation of Section 13A-8-3 of the Alabama Criminal Code." R. 331 (emphasis added).
Section 13A-8-3, Ala. Code 1975, is entitled "Theft of property in the first degree" and provides, in pertinent part, that "[t]he theft of . . . property of any value taken from the person of another constitutes theft of property in the first *Page 148 degree." (Emphasis added.) The indictment not only alleges that a purse and currency were "taken from the person of Lynne Swanson," thereby tracking the language of § 13A-8-3,[1] it makes specific reference to that section as well. Under these circumstances, we find it incredible that the appellant could have failed to understand that he was charged with first-degree theft. Cf. Committee Comments to Rule 13.2(b), A.R.Crim.P. ("Since the adoption of the criminal code, [inclusion in the indictment of the citation of the applicable statute] should not be an undue burden and will ensure that the defendant andhis attorney will know exactly what offense is charged") (emphasis added).
 II
The appellant maintains that his arrest was illegal and that, consequently, the statement he gave after this arrest should have been suppressed.
A suppression hearing was held immediately prior to trial. At this hearing, Birmingham police officers Jerome Green and Herman Hinton testified that, around 12:20 a.m. on August 31, 1990, they went to the 3300 block of 17th Avenue in the Norwood community, in response to a report of a "shooting in the area." R. 11, 39. As they approached the area of the reported shooting, Officer Green, who was driving, turned out the lights on the patrol car "so that [they] could possibly catch the suspect who was doing the shooting." R. 12. When the officers reached the block where the shooting was reported to have occurred, Officer Hinton observed the appellant "running as though he was protecting an object close to his right side." R. 41. Hinton stated that he thought the appellant "probably [had] some type of semi-automatic weapon," and that he called the appellant to Officer Green's attention. R. 49-50. Green then observed the appellant "walking in a fast pace" along the street. R. 12.[2] Hinton testified that when the appellant saw the patrol car, "he began to pick up the pace." R. 48.
As the patrol car approached the appellant, Hinton "rolled [his] window down" and "yelled for [the appellant] to stop." R. 41. The appellant ignored this command and ran into a nearby apartment. The officers left their vehicle and followed him. As the officers reached the door of the apartment into which the appellant had gone, the appellant "stepped back out of the apartment." R. 14. When he reappeared, the appellant did not have anything under his arm. R. 51.
The occupant of the apartment, Gloria Robinson, was also at the door when the appellant reappeared. Officer Green talked with Ms. Robinson and learned that the appellant did not live at that apartment. Although Ms. Robinson had seen the appellant around the neighborhood, she did not know why he ran into her apartment. Green testified that she told him that the appellant had gone into the back of her apartment and had "thrown something down." R. 29-30. Ms. Robinson took Officer Green to "the back room," into which the appellant had gone, and Officer Green observed a purse laying on the floor. R. 18. He asked Ms. Robinson if the purse was hers, and she stated that "she had never seen it before." R. 18. Officer Green took possession of the purse and left the apartment.
While Officer Green was talking with Ms. Robinson, Officer Hinton asked the appellant to accompany him to the patrol car. Hinton patted the appellant down and *Page 149 
asked the appellant his name, then radioed this information to the dispatcher for an NCIC check. The dispatcher reported back that the appellant was wanted on an outstanding misdemeanor warrant for menacing. Hinton testified that he arrested the appellant at this point on the menacing warrant and placed the appellant in the back of the patrol car.
After obtaining the purse from Ms. Robinson's apartment, Officer Green returned to the patrol car. He asked the appellant if the purse was his and the appellant stated that it was not, "but that a lady he [knew] asked him to hold it . . . because she was in a argument, the middle of a argument with somebody, and that she stated the police was coming." R. 19. It appears that about this time, another patrol unit arrived on the scene and the officers in that unit informed Officer Green that a purse snatching had occurred a few hours earlier in the evening. Green radioed in a description of the appellant's clothing and information concerning the purse and its contents and the officer in charge of the purse snatching investigation instructed him "to bring [the appellant] to the precinct." R. 21. Once at the precinct, the appellant was formally arrested for the theft of the purse.
The appellant argues that there was no probable cause to arrest him at the time Officer Hinton ordered him to stop. This is quite true. However, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Terry v.Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889
(1968). Under Terry, an investigatory stop may be made on the basis of reasonable suspicion, which "is a less demanding standard than probable cause." Alabama v. White, 496 U.S. 325,330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990). The standard of reasonable suspicion requires only that an officer have "specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity." Hickmanv. State, 548 So.2d 1077, 1080 (Ala.Cr.App. 1989). To determine whether reasonable suspicion existed for a particular stop, the totality of the circumstances, as known to the officer at the inception of the stop, must be considered. See United States v.Sokolow, 490 U.S. 1, 8, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1
(1989); United States v. Lechuga, 925 F.2d 1085, 1039 (7th Cir. 1991).
A recent report of the occurrence of a crime, when accompanied by other relevant facts or circumstances, such as "observed activity [on the part of] the particular person stopped," can establish the reasonable suspicion necessary to justify an investigatory stop. 3 W. LaFave, Search and Seizure
§ 9.3(d) at 461 (2d ed. 1987). In the present case, the officers were dispatched in the early morning hours to investigate a reported shooting. When they arrived in the block where the shooting was reported to have occurred, Officer Hinton observed the appellant running or walking briskly with an object, which Hinton thought might be a semiautomatic weapon, tucked under his right arm. Upon observing the patrol car, the appellant "pick[ed] up the pace." R. 48.
While "quickening one's pace upon seeing the police" will not, standing alone, support an investigatory stop, 3 LaFave § 9.3(c) at 451, it is not the only factor present in this case. The officers did not just happen to observe the appellant walking down the street with something under his arm — they were at a specific location to investigate a recent report of a shooting. As Officer Green remarked during cross-examination on the motion to suppress, "if somebody was shooting in the area, if they was the one doing the shooting, if they saw a police car, . . . [walking fast would be] the natural thing to do." R. 34-35.
We note that the officers were apparently not given any description of the person involved in the reported shooting, compare People v. Johnson, 125 A.D.2d 702, 510 N.Y.S.2d 21, 22
(1986) (officers received "radio report of a black male with a gun, wearing blue jeans, a blue and white shirt, and a 'kufay hat' "), appeal denied, *Page 150 69 N.Y.2d 882, 515 N.Y.S.2d 1030, 507 N.E.2d 1100 (1987);People v. Wider, 172 A.D.2d 573, 568 N.Y.S.2d 141, 142 (1991) (officers received radio report of "shots fired," which included a description of the perpetrator), and that there were persons other than the appellant present in the area of the shooting when the officers arrived, compare State v. Fernandez,691 S.W.2d 267, 268-69 (Mo. 1985) (when police responded to call concerning "a woman screaming and parties armed," defendant and her two companions were "the only people in the area"). However, based on a consideration of the totality of the circumstances involved — the time of day, the report of a shooting, and the appellant's observed behavior — we find that the officers were in possession of sufficient specific, articulable facts to form a reasonable suspicion that the appellant might be involved in criminal activity. That is all that is required under Terry.
Although reasonable suspicion existed for a stop at the time Officer Hinton ordered the appellant to stop, the stop was not actually effectuated until after the appellant exited Ms. Robinson's apartment. By that time, the officers had additional support for stopping the appellant, in that the appellant had obviously rid himself of the object he was carrying when the officers first observed him by ducking into an apartment not his own. See 3 LaFave § 9.3(c) at 448. Because the investigatory stop of the appellant was grounded on reasonable suspicion, the officers could properly detain him while checking for outstanding warrants. See, e.g., United States v.Lego, 855 F.2d 542, 545 (8th Cir. 1988); State v. Bell,382 So.2d 119, 120 (Fla. 1980). Once the dispatcher reported that there was an outstanding warrant for the appellant, he was properly arrested on that warrant.[3] We also note that, before the appellant was transported to the precinct, enough information had been garnered by the officer that probable cause existed for the appellant's arrest for the theft of Ms. Swanson's purse. See generally Dixon v. State, 588 So.2d 903
(Ala. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 904,116 L.Ed.2d 805 (1992). The appellant was properly arrested and there was no error in the denial of his motion to suppress.
 III
The appellant argues that the prosecutor violated Brady v.Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to produce the stolen purse. The basis of appellant's argument is not readily discernible from his brief, but it appears from statements made at trial that the appellant believes that the purse (1) is exculpatory because the police officers did not submit it for fingerprint testing and (2) would serve to impeach the victim's and officers' testimony on the condition of the purse. In any event, the argument has no merit, for the appellant has not met his burden of establishing "(1) that the prosecution suppressed evidence; (2) that that evidence was favorable to him or exculpatory; and (3) that the evidence was material." Ex parte Kennedy, 472 So.2d 1106, 1110
(Ala. 1985) (emphasis added).
The purse was returned to Ms. Swanson, the owner, the day after the theft occurred. Contrary to appellant's assertions in brief that the "victim stated that she had thrown the purse away," Appellant's brief at 12, Ms. Swanson testified that she still had the purse, although it had been rendered unuseable by the manner of the theft. R. 9091. Detective Phillip Mangina testified at trial that the purse was not processed for fingerprints prior to being returned to Ms. Swanson. "As inCampbell v. State, 437 So.2d 3, 5 (Miss. 1983), [t]he appellant did not request the court to order the production *Page 151 
of the [purse] for fingerprint examination, or to require the police department to have the [purse] processed for same." Since the purse has never been processed for fingerprints, we can only speculate as to whether the purse does or does not bear the appellant's fingerprints. See Batton v. State,260 Ga. 127, 891 S.E.2d 914, 917 (1990). Therefore, appellant has failed to meet his burden of proving that the purse is exculpatory.
Furthermore, in the Brady context, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley,473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). As noted above, testimony regarding the failure of the police to test the purse for fingerprints was introduced at trial. In view of this testimony and the facts that the victim positively identified the appellant as the man who snatched her purse and that the appellant made incriminating statements with regard to the purse, we have no doubt that, whatever the results of fingerprint testing on the purse and whatever the condition of the purse itself, there is no reasonable probability that the result of the trial would have been different had the purse been produced. See United States v. Clark, 928 F.2d 733, 738
(6th Cir.) (lack of identifiable fingerprints on murder weapon not material under facts of the case), cert. denied, ___ U.S. ___, 112 S.Ct. 144, 116 L.Ed.2d 110 (1991); State v. Harnish,560 A.2d 5, 7 (Me. 1989) (fact that defendant's fingerprints were not on items in murder victim's house not material under the facts of the case). We find no Brady violation in this case.
 IV
The appellant alleges that he was prejudiced by the trial judge's action in "forcefully reprimand[ing] defense counsel during his cross-examination of Detective Phillip Mangina." Appellant's brief at 13. According to the appellant, the trial judge "vociferously castigated defense counsel," "stood on the bench and looked down on defense counsel with an air of vengeance," and spoke to defense counsel in "a vituperative tone." Id.
At the outset, we note that there is absolutely nothing in the record to indicate the manner or tone in which the trial court made the contested remarks or to indicate that the judge "stood on the bench." Compare Jones v. State, 398 So.2d 360,367 (Ala.Cr.App.), cert. denied, 398 So.2d 369 (Ala. 1981) (defense counsel objected at trial "to the Court's facial expression showing a hostile attitude toward defense attorneys"). In reviewing the allegedly prejudicial comments, "we are limited to the facts reflected in the record and the fair and reasonable inferences which they afford." Oglen v.State, 440 So.2d 1172, 1175 (Ala.Cr.App.), cert. denied,440 So.2d 1177 (Ala. 1983).
The remarks at issue were, in essence, that there would "be a day of reckoning" if defense counsel did not desist from certain conduct. These remarks did not occur in a vacuum, having been made near the end of defense counsel's cross-examination of the State's last witness. As we stated inMcCovery v. State, 365 So.2d 358, 362-63 (Ala.Cr.App. 1978):
 "Remarks by the trial judge may be open to criticism, but they are not [reversible] error unless they may have affected the result of the trial. It is not every erroneous [remark] by a trial judge, during trial, that will furnish a ground for reversal. To do so it must, in some manner, influence the result of the cause, or be supposed to do so. Each case rests upon its own peculiar facts and circumstances."
(Citations omitted.)
To determine whether the remarks in the instant case were, in fact, prejudicial, it is necessary to assess defense counsel's entire cross-examination of Detective Mangina, who was both the investigating officer in the theft of Ms. Swanson's purse and the officer to whom the appellant admitted taking *Page 152 
the purse.[4] During the course of this cross-examination, much of which related to the purse, its contents, the failure of the officers to have the purse or its contents fingerprinted, and the taking of the appellant's statement, the prosecutor objected some eight times on the grounds that defense counsel was not permitting the witness to answer the question or was asking multiple questions, that defense counsel was testifying, or, most predominantly, that defense counsel was arguing with the witness.[5] All but one of these eight objections were sustained.
In sustaining the prosecutor's fourth such objection, the trial court stated, "That's argumentative. And refrain from doing it, Mr. McInturff." R. 207. After the prosecutor's sixth such objection was sustained, defense counsel began questioning Mangina about the circumstances surrounding the taking of the appellant's statement. When Mangina denied telling the appellant that "things would go easy on him" if he signed the waiver of rights form, defense counsel responded, "He didn't write any of this statement out. I mean, you wrote it out." R. 227. The trial judge, sua sponte, interjected, "Now, that's very argumentative. Put it in the form of a question, Mr. McInturff. The Court's been very patient as to the way you've been interrogating this witness." Id.
Shortly thereafter, another argumentative question elicited an objection by the prosecutor, which was sustained. After a short re-direct examination by the prosecutor, defense counsel again began asking Detective Mangina about the failure to have the purse tested for fingerprints. The prosecutor's objection to yet another argumentative question was sustained. Defense counsel then turned his attention, not for the first time, to the fact that the appellant's statement was not recorded in any way.[6]
 "Q. [By defense counsel McInturff]: Officer, you have stated that you have access to audio, and there is video equipment around Birmingham, isn't there? I mean, if you wanted to video some confession, you could do that, couldn't you?
 "A. I don't know if, like I said, I don't know if we have the — I have never used nor seen anybody use a video. You know, a tape recorder, yes, I have access to that.
 "Q. And now, you're asking the Court to believe that this man made a full-blown statement. Knowing that this man's freedom is at stake —
"MR. DAVIS [Prosecutor]: I'm going to object.
"Q. — and you didn't do —
 "THE COURT: Sustained. That's highly improper, Mr. McInturff. And, if I call you down again, there will be a day of reckoning at the conclusion of this trial.
 "Disregard that, ladies and gentlemen. You are not to consider that in any manner whatsoever.
 "MR. McINTURFF: I'm sorry, Your Honor. I just can't (inaudible) —
 "THE COURT: If you make another statement, we'll have a day of reckoning right now.[7]
"MR. McINTURFF: Yes, sir. No further questions." *Page 153 
R. 234-85 (footnote added). We note that shortly thereafter, when making a motion for judgment of acquittal out of the presence of the jury, defense counsel stated, "I'm sorry I lost my temper while ago, Judge." R. 236.
Quite clearly, it is the duty of the trial judge "to be thorough, courteous, patient, punctual, just, and impartial. Yet he is not required to be a 'Great Stone Face' which shows no reaction to anything that happens in his courtroom.Allen v. State, 290 Ala. 339, 276 So.2d 583 (1973)." Gwin v.State, 425 So.2d 500, 506-07 (Ala.Cr.App. 1982), cert. quashed,425 So.2d 510 (Ala. 1983). A trial judge is not "a mere moderator" of a trial. Sprinkle v. State, 368 So.2d 554, 562
(Ala.Cr.App. 1978), cert. quashed, 368 So.2d 565 (Ala. 1979). Instead, he has a vast array of responsibilities, including that of protecting witnesses "from improper questions and from harsh or insulting demeanor." See Ala. Code 1975, § 12-21-141. In discharging his responsibilities, the trial judge may "properly caution, correct, advise, admonish, and, to a certain extent, criticize counsel during the case, provided it is done in such manner as not to subject counsel to contempt or ridicule, or to prejudice accused in the minds of the jurors," 23A C.J.S. Criminal Law § 1182 (1989). "A trial judge who uses language which tends to bring an attorney into contempt before the jury, or makes any intimation which tends to prejudice the attorney, commits reversible error." Gwin v. State,425 So.2d at 507.
In the case at bar, the trial judge sustained a number of objections made by the prosecutor on the ground that defense counsel was questioning the witness in an argumentative manner. He specifically instructed defense counsel on one occasion to refrain from such conduct, and, on a subsequent occasion, he indicated to defense counsel that defense counsel was still conducting his cross-examination in an argumentative fashion. Despite the repeated objections and warnings, defense counsel continued to question the witness in an inappropriate manner. While the trial judge's comments concerning "a day of reckoning" "would probably have best been left unsaid,"Mullins v. State, 56 Ala. App. 460, 467, 323 So.2d 109, 116, cert. quashed, 295 Ala. 412, 323 So.2d 116 (1975), we cannot say, applying all of the principles set out above to the facts and circumstances of this case, that these comments prejudiced the appellant in the eyes of the jury. See Sanders v. State,426 So.2d 497, 503, 506 (Ala.Cr.App. 1982) (this Court found no prejudice in trial judge's comments which included the statements "I am telling you now to shut up about this marijuana business or I will put you in contempt" and "[w]hen I tell you to quit talking about this witness having smoked marijuana I mean it," where defense counsel had continued line of questioning that trial judge had previously stated was irrelevant and to which trial judge had sustained repeated objections by the prosecutor); Hope v. State, 390 So.2d 1077,1082 (Ala.Cr.App.), cert. denied, 390 So.2d 1083 (Ala. 1980) (although noting that the remarks might have better been left unsaid, this Court found no prejudice in trial judge's comments, which included the statements "he is not a hostile witness and the Court is not going to permit you to cross-examine this witness and get all that gobbley gook before the jury" and "your last question was gobbley gook and, in the judgment of the Court, intended nothing but to confuse the jury," where defense counsel had persisted in efforts to cross-examine his own witness after trial judge had refused to declare the witness hostile and continued to ask question to which trial court had repeatedly sustained prosecutor's objection). Moreover, in the instant case, the trial judge explicitly instructed the jury to disregard his first remark concerning a day of reckoning, thus ensuring that no prejudice resulted from that remark. See McCovery v. State,365 So.2d at 362.
We find it appropriate to conclude our discussion of this issue with the following language from Dennison v. State,17 Ala. App. 674, 676, 88 So. 211, 213 (1921):
 "Occurrences of this character . . . are very regrettable and are to be deplored. They could be obviated if all those connected with the trial would be careful to *Page 154 
accord to every one, also so connected, the high degree of courtesy and respect expected, or desired, or demanded by himself. An attorney at law is an officer of the court, and as such is under the duty to deport himself with dignity and circumspection, and upon all occasions to manifest and exhibit a marked respect for the court in which he practices, and for the judge thereof, as well as for all officers of court, parties and their witnesses, and for the juries in attendance."
See also Comment, Rule 3.5, Alabama Rules of Professional Conduct ("An advocate can present the cause, protect the record for subsequent review and preserve professional integrity by patient firmness no less effectively than by belligerence or theatrics").
 V
There was no error in the trial court's denial of the appellant's motion for new trial alleging the discovery of new evidence.
The appellant was tried on March 18-19, 1991. The State's evidence tended to show that two Birmingham police officers observed the appellant walking quickly down a public street carrying something under his arm. The appellant went into the apartment of Gloria Robinson, emerging only moments later without the object he had been previously carrying. Almost immediately thereafter, one of the officers found in Ms. Robinson's apartment a purse containing credit cards issued to Lynne Swanson. Ms. Swanson testified at trial and positively identified the appellant as the man who snatched her purse only a few hours before the appellant was seen by the officers. Although Ms. Robinson had been subpoenaed by the State, she apparently could not be located the day of trial and was not called as a witness by the State. The appellant did not subpoena Ms. Robinson for trial, did not object to her absence at trial, and did not seek a continuance to obtain her presence.
On March 26, 1991, defense counsel filed a motion for new trial alleging that, five days after trial, he had located Ms. Robinson and spoken to her. He asserted that Ms. Robinson was "prepared to testify" that the appellant did not "bring the purse into her residence on the day or night of August 31, 1990." R. 351. It was also alleged in the motion that defense counsel had repeatedly attempted, without success, to locate Ms. Robinson prior to trial. A hearing was held on the motion on April 5, 1991. At this hearing, defense counsel reasserted the allegations contained in the motion, but presented no evidence. Ms. Robinson did not testify.[8]
There is no error in a trial court's denial of a motion for new trial where no evidence is offered in support of that motion. Tucker v. State, 454 So.2d 541, 547-48 (Ala.Cr.App. 1983), reversed on other grounds, 454 So.2d 552 (Ala. 1984);McKinnis v. State, 392 So.2d 1266, 1269 (Ala.Cr.App. 1980), cert. denied, 392 So.2d 1270 (Ala. 1981). The motion itself was unverified and was not accompanied by any supporting affidavits. Consequently, the assertions of counsel contained therein "are bare allegations and cannot be considered as evidence or proof of the facts alleged." Thompson v. State,444 So.2d 899, 902 (Ala.Cr.App. 1984) (quoting Daniels v. State,416 So.2d 760, 762 (Ala.Cr.App. 1982)); Smith v. State,364 So.2d 1, 14 (Ala.Cr.App. 1978). Similarly, statements made by counsel during a hearing on a motion for new trial cannot be considered evidence in support of the motion. Vance *Page 155 v. City of Hoover, 565 So.2d 1251, 1254 (Ala.Cr.App. 1990). These principles do not apply only to counsel's assertions concerning Ms. Robinson's purported testimony. They are equally applicable to his assertions that he was diligent in his efforts to locate Ms. Robinson prior to trial. Cf. Hamrick v.State, 548 So.2d 652, 653 (Ala.Cr.App. 1989) (counsel's assertions of efforts to locate absent witness not proof of diligence on motion for continuance).
Moreover, even had the appellant presented evidence in the form of testimony by Ms. Robinson, his motion for new trial would have been properly denied. To be considered "newly discovered," evidence must meet certain requirements. One of these requirements is that the evidence "could not have been discovered before the trial by the exercise of due diligence."E.g., Taylor v. State, 266 Ala. 618, 620, 97 So.2d 802, 804
(1957); Isom v. State, 497 So.2d 208, 212 (Ala.Cr.App. 1986). It is clear that the appellant and defense counsel knew of Ms. Robinson's existence at the time of trial.
 " 'Evidence is not considered newly discovered where a failure to thoroughly examine a witness prevents the earlier discovery of new or different testimony.' Johnson v. State, 439 So.2d 1340, 1342
(Ala.Cr.App. 1983). This rule applies even where the witness does not actually testify at trial but whose existence is known to either the defendant or his attorney. Ward v. State, 49 Ala. App. 710, 712, 275 So.2d 690 (1973); Barnes v. State, 415 So.2d 1217, 1219 (Ala.Cr.App. 1982)."
Chappell v. State, 457 So.2d 995, 997 (Ala.Cr.App. 1984). A motion for new trial is "addressed to the sound discretion of the trial court and [his decision thereon] will not be revised on appeal unless it clearly appears that the discretion has been abused." Nichols v. State, 267 Ala. 217, 228,100 So.2d 750, 760-61 (1958). Accord, e.g., Brownlee v. State,545 So.2d 151, 164 (Ala.Cr.App. 1988), affirmed, 545 So.2d 166 (Ala.), cert. denied, 493 U.S. 874, 110 S.Ct. 208, 107 L.Ed.2d 161
(1989). We find no abuse of discretion in this case.
 VI
The appellant asserts that he should have been permitted to "produce a material witness" who was under subpoena, but who was not present in or near the courtroom at the time he was called as a witness. Appellant's brief at 19. We interpret this as an argument that the trial court erred in denying the appellant a continuance to obtain this witness.
The State has declined to address this issue. Instead, the attorney general relies on Vinzant v. State, 462 So.2d 1037
(Ala.Cr.App. 1984), and its progeny and asserts that this issue was waived by the appellant's failure to cite any supporting authority in his brief. I have previously taken the position that "Vinzant is a useless legal fiction" which has no place in the criminal appeals arena. Parker v. State, 581 So.2d 1135,1136 (Ala.Cr.App. 1990) (Bowen, J., dissenting). If issues for which no authority is cited are deemed to be waived, then filing a brief that fails to cite authority is the functional equivalent of failing to file a brief at all, which "constitutes a per se denial of the effective assistance of counsel." Id. Where an issue has merit, waiver on this ground obviously raises "the question of ineffective assistance of counsel." Id. Adhering to the stance I took in Parker, I now address the last issue raised by the appellant.
The appellant testified in his own behalf. At the conclusion of that testimony, defense counsel called as his next witness "Mr. Whitehead from the County Jail." R. 269. The bailiff checked the witness room[9] and reported that "[t]here's nobody out there." R. 269. Defense counsel requested "a moment to go get [the witness]. He was subpoenaed yesterday." R. 269. The trial court denied this request and, without any further discussion, the appellant rested. The trial judge then excused the jury and asked if there were any motions by the attorneys. The following then occurred: *Page 156 
 "MR. McINTURFF [Defense Counsel]: Yes, sir, Your Honor. First of all, Judge, we would ask the Court, once again, since he was served and subpoenaed, that we bring Mr. Whitehead in. I think he would bring (inaudible) material to our case, Judge. I don't know why he's not here, but he was served yesterday.
 "THE COURT: Court is not going to delay this trial any more. I told you time and time again. This case was set last Monday, yesterday a week ago. I rolled it over from last week to this week, and you've been on the case since September of 1990, and you're informing the Court that you just subpoenaed the witness yesterday?
 "MR. McINTURFF: Yes, sir. He was just subpoenaed. We came —
"THE COURT: I'm not delaying this trial any more."
R. 270-71. Defense counsel excepted to this ruling, but made no further statements with regard to the witness Whitehead.
It is well settled that a motion for continuance is addressed to the sound discretion of the trial court and that, absent a showing of an abuse of that discretion, the trial court's decision on the matter will not be overturned on appeal.E.g., Fletcher v. State, 291 Ala. 67, 68, 277 So.2d 882, 883
(1973); Logan v. State, 251 Ala. 441, 443, 37 So.2d 753, 754
(1948); Briggs v. State, 549 So.2d 155, 159 (Ala.Cr.App. 1989);Chiles v. State, 26 Ala. App. 358, 359, 159 So. 700, 701 (1935). However, a motion for continuance should be granted where it is made in order to obtain a missing witness or evidence and the following requirements are met:
 "(1) the expected evidence must be material and competent; (2) there must be a probability that the evidence will be forthcoming if the case is continued; and (3) the moving party must have exercised due diligence to secure the evidence."
Ex parte Saranthus, 501 So.2d 1256, 1257 (Ala. 1986).
The appellant did not, at trial, make an offer of proof regarding Whitehead's expected testimony or specify in any way how that testimony would be material. The mere assertion by counsel that the witness's testimony is "material to our case" is simply not sufficient to establish that the testimony is "material and competent." See Saranthus, 501 So.2d at 1257 (in reviewing the trial court's denial of the motion for continuance, the appellate court must first ask "would the testimony, as described by [appellant], be material and competent?") (emphasis added). In this case, the first of the three Saranthus requirements was clearly not met. McLeod v.State, 581 So.2d 1144, 1153 (Ala.Cr.App. 1990).
Moreover, we note that at the conclusion of the State's case-in-chief, the appellant requested and was granted "a short recess." R. 238. When trial resumed, the appellant was called as the first defense witness. There was no mention of Whitehead until the conclusion of the appellant's testimony. The appellant claims in brief that Whitehead, a doctor at the county jail, "was waiting to be called by the defense as itsfirst witness" and "could have been brought to the stand in less than five minutes." Appellant's brief at 19 (emphasis added).[10] While the assertion that Whitehead was to be the first defense witness is not supported by what occurred at trial, it is clear that the appellant was afforded an opportunity, in the form of the "short recess" immediately after the State's case-in-chief, in which he could have obtained the presence of the witness Whitehead. Under the circumstances of this case, it is clear that the trial court did not abuse its discretion in denying the appellant's request for "a moment to go get" this witness.
For the reasons stated above, the judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] Under the case law of this state, this indictment, which substantially follows the language of § 13A-8-2, defining theft generally, and 13A-8-3, defining the specific offense of theft in the first degree, is clearly sufficient to charge the appellant with first degree theft. See, e.g., Ex parte Allred,393 So.2d 1030, 1032 (Ala. 1980); White v. State, 44 Ala. 409,410-11 (1870); Stout v. State, 547 So.2d 894, 899 (Ala.Cr.App. 1988), affirmed, 547 So.2d 901 (Ala. 1989); Ramey v. State,9 Ala. App. 51, 54, 64 So. 168, 169 (1913).
[2] The appellant makes much of the fact that there was a discrepancy in the officers' descriptions of his movement along the street. However, we note that, on cross-examination, when defense counsel asked Officer Hinton if he had "said [the appellant] was running," Hinton replied, "Yes, sir. Kind of a brisk walk. And he began to pick up the pace when he saw our vehicle." R. 48.
[3] Section 15-10-3, Ala. Code 1975, was amended, effective May 17, 1989. The amended version, which was in effect at the time of this offense, provides that "[a]n officer may arrest any personwithout a warrant, on any day and at any time . . . [w]hen he has actual knowledge that a warrant for the person's arrest for the commission of a felony or misdemeanor has been issued." Ala. Code § 15-10-3(a)(6) (Supp. 1990) (emphasis added). Before the 1989 amendment, officers could make warrantless arrests for misdemeanors only if they were committed in the officer's presence. Ala. Code 1975, § 15-10-3(1).
[4] The appellant contends in this appeal that his statement should have been suppressed as the fruit of an illegal arrest, see Part II above, but does not argue that the statement was inadmissible on any other ground.
[5] Although the prosecutor did not assign a specific ground for each one of these objections, it is clear from the context of the question posed, the comments of the prosecutor, or the response of the trial court that these were the grounds relied on. A few objections on specified evidentiary grounds were also interposed by the prosecutor.
[6] There is, of course, no requirement that a statement be recorded in order to be admissible. See Starks v. State,594 So.2d 187, 196 (Ala.Cr.App. 1991); Hawkins v. State,443 So.2d 1312, 1314 (Ala.Cr.App. 1983); Beckham v. State, 389 So.2d 573,577 (Ala.Cr.App. 1980).
[7] We do not interpret this comment as a refusal to permit defense counsel to further cross-examine Detective Mangina in an appropriate manner. Nor, apparently, does appellant, for he does not contend that his cross-examination of Mangina was improperly curtailed.
[8] It is asserted in brief that the hearing on the motion was held when defense counsel happened to be in the trial judge's courtroom on an unrelated matter and without any advance notice to counsel. Appellant's brief at 17-18. According to appellant's brief, defense counsel "immediately requested that he be allowed thirty minutes to bring Ms. Robinson into Court to testify at the hearing." Id. at 18. The record of the hearing does not support either allegation. There was no objection by defense counsel to proceeding with the hearing at that time or to proceeding without the presence of Ms. Robinson. While defense counsel did, at the end of his initial argument, "ask that Ms. Robinson, the Court allow us to produce Ms. Robinson as a key witness in the motion," R. 313, the trial court never ruled on this request. Defense counsel did not seek a ruling or pursue the matter in any way.
[9] Immediately after the jury was selected, the trial judge announced that the Rule would be in effect for the appellant's trial, and he instructed all witnesses that they "must go outside the courtroom. The bailiff will show you to your respective witness rooms." R. 63.
[10] We note that none of this information was relayed to the trial judge and that defense counsel referred to the witness as Mr. Whitehead at trial. *Page 157