The appellant, Peter William Owen, was indicted by a Montgomery County grand jury in a two-count indictment; one count charged possession of marijuana and one count charged possession of cocaine. He filed a motion to suppress the evidence found in his automobile that resulted in his arrest, arguing that the evidence was the result of an illegal search and seizure. The circuit court denied this motion after an evidentiary hearing. The appellant then pleaded guilty to two counts of unlawful possession of controlled substances, reserving the right to appeal the circuit judge's denial of his motion to suppress. He was sentenced to three years' incarceration in each case. These sentences were suspended and the appellant was placed on supervised probation for three years.
At the appellant's suppression hearing, State Trooper M.D. Farrell testified that on February 17, 1997, at around 6:30 p.m., he was patrolling the area of Interstate 65 north near Teague Road, when he noticed a vehicle with a defective headlight pass his vehicle. He turned on his emergency lights and stopped the vehicle in the emergency lane. According to Trooper Farrell, the appellant immediately got out of the vehicle and rushed to the back of it. Because he did not want to be confronted while still in the patrol car, Trooper Farrell quickly got out of his car to meet the appellant between the two cars. The appellant asked Trooper Farrell what he had done wrong, and Trooper Farrell replied that the appellant had a headlight that was out and he asked the appellant if he could see his driver's license. Trooper Farrell testified that the appellant was so nervous trying to locate his driver's license that he was "shaking real bad." Furthermore, Trooper Farrell testified that he believed that when he was attempting to look at the appellant's vehicle, the appellant tried to block his view by swaying or stepping into his line of sight. According to Trooper Farrell, the appellant stated while looking for his license, "I'll get it fixed, can't you just let me go, can't you just let me go." However, when Trooper Farrell asked him whether he was in a hurry, the appellant stated that he was not. When the appellant finally handed *Page 746 
over his license, Trooper Farrell told him that he would write a warning for the defective headlight and asked the appellant to have a seat in his patrol car. Trooper Farrell ran a driver's license and tag check, which revealed that the car belonged to someone other than the appellant (the appellant told Trooper Farrell that person was his father) and that the appellant had a clear status on his driver's license. When Trooper Farrell began writing the warning, the appellant became even more nervous, "Fidgeting around real bad, taking deep breaths, . . . sweating, . . . [unable] to talk . . . without drawing a deep breath." Trooper Farrell told him he could calm down, assuring him that he was not making an arrest but that he was only writing a warning. Trooper Farrell had a check run over the radio to see if the appellant had an arrest record. When he asked the appellant if he had ever been arrested, the appellant initially replied that he had not. However, when the check came back over the radio indicating that the appellant had been arrested, the appellant replied, "well, there may have been an incident in Birmingham," referring to a DUI incident. At least three or four times, Trooper Farrell attempted to ask the appellant about his car. Each time, the appellant changed the subject by asking a question about Trooper Farrell's car.
Trooper Farrell said that he began to suspect that the appellant was hiding something in his vehicle. After the arrest check showed that the appellant had been arrested previously, Trooper Farrell called for backup and for a K-9 unit. During the approximately 10 minutes it took for Deputy Stokley and the police dog to arrive at the scene, Trooper Farrell finished writing the warning and asked the appellant for consent to have the dog walk and sniff around his vehicle. After the appellant initially said he did not know what he should do, Trooper Farrell told the appellant, "I can't tell you. You have to give me consent. I am asking for consent. . . . I got a dog on the way. If you don't want to give me consent I can't make you, but . . . I would like to let the dog walk around the outside of the car." The appellant responded that he would not have a problem with that. When Deputy Stokley arrived with his dog, he had the dog walk around the vehicle. The dog began scratching on the driver's side door, went up into the rear driver's side tire well, and made an indication towards the trunk area. When the dog entered the vehicle, it found a box that had once contained Minute brand rice, but which now appeared to contain cocaine. Trooper Farrell put the appellant in his patrol car. When he asked the appellant what was in the box, the appellant told him that it was cocaine. Trooper Farrell then told the appellant that he was under arrest for possession of a controlled substance. The vehicle was taken to the drug operation center of the Alabama Bureau of Investigation, narcotics division, where the vehicle was searched. Officers found 442.89 grams of marijuana and a bag of .288 grams of cocaine. The amount of cocaine in the Minute Rice box was measured at 26.5 grams. The appellant filed a motion to suppress the evidence of drugs found in his vehicle, arguing that the evidence was the fruit of an illegal search and seizure in violation of his rights under the Fourth Amendment of the United States Constitution. After the circuit court denied the motion, the appellant pleaded guilty to two counts of possession of controlled substances, reserving his right to appeal the denial of his motion to suppress.
The appellant argues that the evidence of drugs found in his vehicle should have been suppressed because, he argues, Trooper Farrell did not have reasonable suspicion to have the K-9 unit search the car. Any evidence obtained in violation of the United States Constitution is inadmissible at trial. Mapp v. Ohio,367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. The appellant concedes that Trooper Farrell had the legal authority to stop him initially and to write the warning citation for the defective headlight. However, according to the appellant, the scope of the stop should have been limited to what was necessary to issue the warning citation for the traffic violation. As we stated in Statev. Washington, 623 So.2d 392, 395 (Ala.Crim.App. 1993):
 "Once the traffic offender signs the UTTC [Uniform Traffic Ticket and Citation], the arresting officer is to `forthwith *Page 747 
release him from custody.' § 32-1-4(a)[, Ala. Code 1975]. The officer may further detain the driver only if he has probable cause to arrest the driver for some other non-traffic offense, see Hawkins v. State, 585 So.2d 154 (Ala. 1991), or has a reasonable suspicion of the driver's involvement in some other criminal activity justifying further detention for investigatory purposes under Terry v. Ohio [, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)], see United States v. Tapia, 912 F.2d 1367 (11th Cir. 1990).
 "`Reasonable suspicion is a less demanding standard than probable cause.' Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990). However, reasonable suspicion exists only if the officer has `specific, particularized, and articulable reasons indicating that the person [stopped] may be involved in criminal activity,' Hickman v. State, 548 So.2d 1077 (Ala.Crim.App. 1989). `To determine whether reasonable suspicion existed for a particular stop, the totality of the circumstances, as known to the officer at the inception of the stop, [or, in this case, at the time of the continued detention,] must be considered.' Arnold v. State, 601 So.2d 145, 149 (Ala.Cr.App. 1992) (emphasis added by Washington court). Accord Lamar v. State, 578 So.2d 1382, 1385 (Ala.Cr.App.), cert. denied, 596 So.2d 659 (1991)."
(Emphasis added in Washington.)
The appellant relies heavily on Washington to argue that Trooper Farrell did not have a reasonable suspicion that he was engaged in some other criminal activity. The state trooper inWashington attempted to base his reasonable suspicion of criminal activity on four factors: (1) Washington had a temporary driver's license, (2) the car he was driving was a rental car rented to someone else, (3) the car had a temporary license plate, and (4) he was extremely nervous. Id. at 396-397. We held that the trooper did not have "specific, particularized, and articulable" grounds for suspecting any criminal activity. Id. at 397. Although the fact that the car was rented to another party might be relevant to the question whether the car was stolen, the first three factors were held to be irrelevant to whether Washington was transporting drugs. Id. at 398.
Key to the appellant's argument in this case was our holding inWashington that nervousness exhibited by the person stopped by the police cannot alone form the basis for reasonable suspicion.Id. The appellant argues that Trooper Farrell likewise lacked reasonable suspicion to search his vehicle because, he says, like the Trooper in Washington, Trooper Farrell based his reasonable suspicion ultimately on the appellant's nervousness. According to the appellant, Trooper Farrell's view of the appellant as nervous "tainted" his "entire perception of the encounter."
The present case, however, is distinguishable from Washington.
Where all the other factors cited by the trooper in Washington
were completely irrelevant to the question whether drugs were in the vehicle, Trooper Farrell was able to cite "specific, particularized, and articulable" grounds, other than mere nervousness, for reasonably suspecting that the appellant was engaged in criminal activity. According to Trooper Farrell, when he was stopped, the appellant immediately "jumped" out of his vehicle and went "immediately" to the back of his vehicle. He appeared to be trying to obstruct Trooper Farrell's view of his car by swaying and stepping into his line of sight. Furthermore, he became evasive when Trooper Farrell asked him about his car by asking questions about Trooper Farrell's car. Moreover, he initially falsely stated that he had never been arrested. Although the appellant correctly notes that none of these factors alone would have justified searching his car, we must look at the totality of the circumstances when determining whether reasonable suspicion exists. Washington, 623 So.2d at 395. All of these factors were relevant to the question whether the appellant was hiding something illegal in his car and viewed along with the appellant's extreme nervousness gave Trooper Farrell a basis to reasonably suspect that the appellant was engaged in criminal activity. Unlike Washington, the appellant was not only nervous, but was also evasive. We have previously held that evasive words and behavior can form the basis for reasonable suspicion *Page 748 
to conduct a search. Childress v. State, 455 So.2d 175, 177
(Ala.Cr.App. 1984); Key v. State, 566 So.2d 251, 253 (Ala.Cr.App. 1990). Therefore, the appellant's continued detention from the time Trooper Farrell issued a warning for the defective headlight leading to the search of his vehicle was based upon reasonable suspicion and was not in violation of the Fourth Amendment. The circuit court's denial of the appellant's motion to suppress is due to be affirmed.
AFFIRMED.
All judges concur.