I respectfully dissent from the majority's opinion reversing the trial court's order suppressing the controlled substances seized from Curtis McPherson's vehicle during a traffic stop. The principal reason given by Officer Peoples for detaining McPherson was that McPherson acted exceedingly nervous. The prosecution added that McPherson was also in lawful possession of a pistol and that his automobile insurance had expired. However, Officer Peoples testified that he had obtained all the information he needed to issue the warning ticket but because McPherson was nervous, he decided to search McPherson's automobile for drugs. That Officer Peoples did not submit the warning ticket to McPherson for him to sign until *Page 454 
after Officer Peoples had summoned a K-9 to search for drugs was obviously an intentional action meant to circumvent the release requirement of § 32-1-4(a), Ala. Code 1975.
 "Once the traffic offender signs the UTTC [Uniform Traffic Ticket and Complaint], the arresting officer is to `forthwith release him from custody.' § 32-1-4(a). The officer may further detain the driver only if he has probable cause to arrest the driver for some other non-traffic offense, see Hawkins v. State, 585 So.2d 154 (Ala. 1991), or has a reasonable suspicion of the driver's involvement in some other criminal activity justifying further detention for investigatory purposes under Terry v. Ohio, [392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889
(1968),] see United States v. Tapia, 912 F.2d 1367
(11th Cir. 1990)."
State v. Washington, 623 So.2d 392, 395 (Ala.Crim.App. 1993). The question is whether Officer Peoples had an objective basis at the time of the stop or developed one during the stop to believe that McPherson was in possession of drugs.
 "`"To determine whether reasonable suspicion existed for a particular stop, the totality of the circumstances, as known to the officer at the inception of the stop, [or, in this case, at the time of the continued detention,] must be considered." Arnold v. State, 601 So.2d 145, 149
(Ala.Cr.App. 1992) (emphasis added by Washington
court). Accord Lamar v. State, 578 So.2d 1382, 1385
(Ala.Cr.App.), cert. denied, 596 So.2d 659 (1991).'"
Owen v. State, 726 So.2d 745, 747-48 (Ala.Crim.App. 1998) (quoting State v. Washington, 623 So.2d at 395).
 "When making a determination of `reasonable suspicion,' we must `look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing.' United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (quoting United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). It is clear that `an "inchoate and unparticularized suspicion" or "hunch" of criminal activity' is not enough to satisfy the minimum level of objectivity required. [Illinois v.] Wardlow, 528 U.S. [119] at 124, 120 S.Ct. 673[, 145 L.Ed.2d 570 (2000)] (quoting Terry [v. Ohio], 392 U.S. [1] at 27, 88 S.Ct. 1868[, 20 L.Ed.2d 889] [(1961)])."
United States v. Perkins, 348 F.3d 965, 970 (11th Cir. 2003).
"[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." Illinois v. Wardlow,528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (emphasis added). "We have previously held that evasive words and behavior can form the basis for reasonable suspicion to conduct a search.Childress v. State, 455 So.2d 175, 177 (Ala.Cr.App. 1984); Keyv. State, 566 So.2d 251, 253 (Ala.Cr.App. 1990)." Owen v.State, 726 So.2d at 747-48. However, it is well established that a defendant's nervousness or agitation alone is not a reasonable, articulable suspicion of criminal activity to justify continued detention after a traffic stop.
In State v. Washington, supra, Washington was stopped at approximately 2:30 a.m. on an interstate for speeding by Alabama State Trooper William Eller. Washington was taken to Officer Eller's patrol car. A video camera mounted in the patrol car recorded a large portion of the conversation between Officer Eller and Washington. Washington's only form of identification was a temporary Louisiana driver's license, which did not have a photo. However, Washington told Officer Eller that he *Page 455 
had a work identification card with a photograph in his car but for safety reasons, Officer Eller would not let Washington return to his car to retrieve it. Officer Eller gave the following reasons for detaining Washington after the Uniform Traffic Ticket and Complaint ("the UTTC") was signed: Washington had a temporary driver's license; Washington's license plate was temporary; Washington was driving a car rented by a third person, and the rental agreement did not list Washington as a driver; and Washington appeared to be very nervous. As soon as Washington signed the UTTC, Officer Eller stated to Washington that there was a problem with people hauling drugs up and down the interstate and asked if he could search Washington's car. Officer Eller then began questioning Washington about his prior arrest record and wanted to know if Washington had ever been in jail on a drug charge. Washington said that he had a past arrest for possession of cocaine and Officer Eller requested the dispatch operator to run an "EPIC" check on Washington. Further conversation ensued concerning the search of Washington's car. Officer Eller told Washington that he could be detained if he refused to give Officer Eller his consent to search the car. Washington refused and Officer Eller radioed for a canine unit to come to the scene. While waiting on the canine unit, the Officer Eller learned from dispatch that Washington had two prior drug convictions. The drug-sniffing dog arrived and alerted at the driver's door of Washington's car. After a search, .2 grams of cocaine and two "wads" of cash were found in the car. At approximately 3:51 a.m., Washington was arrested for possession of cocaine.
Washington moved to suppress the cocaine; the trial court granted the motion. On appeal, this Court affirmed the trial court's order, finding that the officer "did not have sufficient `specific, particularized, and articulable' reasons to suspect that the defendant was engaged in any criminal activity other than speeding." 623 So.2d at 397. This Court found that the facts that Washington had a temporary driver's license, that the license plate on the car was temporary, that the car was rented by a third person and the rental agreement did not list Washington as a driver,[1] and that Officer Eller stated that Washington was nervous did not create reasonable suspicion that Washington was carrying illegal drugs. In particular, theWashington Court noted the following concerning Officer Eller's allegation that Washington was nervous.
 "As previously noted, the video tape visually depicts only the defendant's car and the activity there, so that we cannot see the defendant during his detention in [Officer] Eller's vehicle. We do note, however, that, until [Officer] Eller asked for permission to search the car, the defendant answered all questions without hesitation and even expansively. There is nothing in the tone of his voice or his manner of speaking to indicate that he was `extremely nervous.'"
State v. Washington, 623 So.2d at 398.
In Washington, this Court concluded: "None of the four factors relied on by the State are inherently suspicious and none of those factors would, standing alone, establish the reasonable suspicion necessary to justify Trooper Eller's continued detention of the defendant after the defendant signed the UTTC."State v. Washington, 623 So.2d at 399. *Page 456 
I believe that the rationale from Washington is applicable to the facts presented in the instant case. Thus, I believe thatWashington should be followed as precedent for affirming the trial court's order in the instant case that McPherson's nervousness did not provide reasonable suspicion of drug possession in order to justify investigative detention beyond the traffic stop. If Washington is not followed in the instant case, I believe that it should be overruled.
In United States v. Perkins, supra, Perkins was stopped by Officer Colston of the Alabama Highway Patrol for a lane violation on the interstate and was given a warning ticket. However, after completing the warning citation, "Colston continued to detain Perkins because of his nervousness; what he perceived as Perkins' evasive behavior in response to his questions; and his hunch that Perkins was being untruthful about his destination." United States v. Perkins, 348 F.3d at 968. When Perkins refused to allow Colston to search his car, Colston called for a drug-sniffing dog to come to the scene. Ultimately, narcotics were found in the car and Perkins was arrested. The trial court granted Perkins's motion to suppress the narcotics. The United States Court of Appeals for the Eleventh Circuit found that the following circumstances, "separately or cumulatively, cannot support a legitimate inference of further illegal activity that rises to the level of objective, reasonable suspicion required under the Fourth Amendment":
 "(1) Perkins' nervousness; (2) the `odd behavior' of Perkins in repeating the questions Colston asked him; (3) Perkins' possession of a Florida driver's license while claiming to live in Montgomery, Alabama; and (4) the `inconsistent' statements from Perkins and Scott with regard to whom they were going to see in Greenville, Alabama."
United States v. Perkins, 348 F.3d at 970 (footnote omitted).
The Perkins court stated in regard to the above facts:
 "In this Circuit, we have required more than the innocuous characteristics of nervousness, a habit of repeating questions, and an out-of-state license for giving rise to reasonable suspicion. See United States v. Pruitt, 174 F.3d 1215, 1221 (11th Cir. 1999) (holding that the fact that the driver was Hispanic and had an out-of-state license plate was not enough to detain him beyond the issuance of the speeding ticket); United States v. Tapia, 912 F.2d 1367, 1371 (11th Cir. 1990) (`[B]eing Mexican, having few pieces of luggage, being visibly nervous or shaken during a confrontation with a state trooper, or traveling on the interstate with Texas license plates (not yet a crime in Alabama) . . . fail to suggest that appellant . . . [was] engaged in any criminal activity other than speeding on the highway.')."
United States v. Perkins, 348 F.3d 965 at 971. See also,Joshua v. DeWitt, 341 F.3d 430, 445 (6th Cir. 2003) ("`[N]ervous, evasive behavior' is the standard to justify reasonable suspicion, not nervousness or restlessness."); UnitedStates v. Chavez-Valenzuela, 268 F.3d 719, 726 (9th Cir. 2001) ("[N]ervousness during a traffic stop — even the extreme nervousness [the defendant] exhibited here — in the absence of other particularized, objective factors, does not support a reasonable suspicion of criminal activity, and does not justify an officer's continued detention of a suspect after he has satisfied the purpose of the stop. [The officer] lacked the requisite reasonable suspicion when he continued to detain [the defendant] after completing the traffic stop and asked him if he was carrying drugs, thereby violating [the defendant's] *Page 457 
Fourth Amendment rights.") (footnote omitted); Peters v. State,859 So.2d 451, 454 (Ala.Crim.App. 2003) ("The prevailing view is that `unless coupled with additional and objectively suspicious factors, nervousness in the presence of a police officer and/or failure to make eye contact do not establish reasonable suspicion to believe that the person is engaged in criminal activity.' [State v.] Washington [,623 So.2d 392] at 398 [(Ala.Crim.App. 1993).]"); Abner v. State, 741 So.2d 440, 445 (Ala.Crim.App. 1998) ("`"While there is some authority to the contrary, the majority view appears to be that, unless coupled with additional and objectively suspicious factors, nervousness in the presence of a police officer and/or failure to make eye contact do not establish reasonable suspicion to believe that the person is engaged in criminal activity."' Hopkins v. State,661 So.2d 774, 780 (Ala.Cr.App. 1994), quoting State v. Washington,623 So.2d 392, 398 (Ala.Cr.App. 1993).").
Like nervousness, the additional facts that McPherson was in lawful possession of a pistol and had no proof of current automobile insurance are irrelevant to the question whether there was reasonable suspicion to detain McPherson for possession of illegal drugs. Those facts do not provide reasonable suspicion of drug possession in order to justify investigative detention beyond the traffic stop.
Moreover, under to the de novo standard of review that applies in this case, I have watched the videotape of the encounter between Officer Peoples and McPherson and have reached the same conclusion as the one expressed by the trial judge:
 "THE COURT: Well, I don't want to second-guess the officer. I wasn't there putting myself in his position out there on the highway. But I observed the tape and I observed the defendant, and I heard him speak. And I know nervousness is a subjective thing. But I didn't find any great high anxiety, no great high degree of excitement or what appeared to be nervousness. Even when the dog was around the car, based on my observation, where there was any great degree of nervousness in his speech or his actions.
 "MR. THOMPSON [the prosecutor]: I respect what you saw. But you have to also keep in mind that the majority of the time there was no camera on the defendant.
 "THE COURT: I understand. I am not second-guessing the officer. He was out there on the scene. He was listening. I am saying what I observed. And in fact he asked the guy — the defendant whether he was nervous. He said, no, I am not nervous. And I listened to the tone of voice very attentively to see what is it we are dealing with here. I don't find high excitement. Perhaps the officer found there may have been."
(R. 37-38.)
I am in agreement with the trial court's observation that while there are several minutes in which only the arresting officer could observe McPherson, there is nothing on the videotape, either from the sound of McPherson's voice or his physical demeanor, suggesting that McPherson was inordinately nervous during the stop. Therefore, even if nervousness alone could justify an officer's continuing detention in these circumstances, the detention of McPherson would not have been justified here because McPherson was not exceedingly nervous. Therefore, I respectfully dissent.
WISE, J., concurs.
[1] The Court stated that although this fact might indicate that the car was stolen, it was clear that Officer Eller detained Washington to investigate the possibility that he was transporting illegal drugs and not to determine whether the car was stolen. *Page 458